# FEBRUARY, 1896.

89  155
90  166
91  380

## J. A. DePOYSTER v. A. J. BAKER, COMMISSIONER LAND OFFICE.

### No. 343.—Decided February 3, 1896.

**1.  Purchaser of Land—Return by State of Purchase Money—Assignee.**

The act of the Twenty-fourth Legislature (Rev. Stats., 4159c) providing for the return of purchase money by the State to parties who in good faith purchased public lands for which they could get no title, applies only to the parties who paid the money to the State. The law does not relieve purchasers from or assignees of such parties. (P. 157.)

**2.  Mandamus Against Public Officer.**

A writ of mandamus will not issue against a public officer unless it be to compel the performance of an act clearly enjoined upon him by law, which is ministerial in its character, and neither involves the exercise of discretion nor leaves any alternative. (P. 158.)

**3.  Same—Commissioner of Land Office—Issuance of Certificate.**

Plaintiff by petition to Supreme Court sought to obtain mandamus requiring the Commissioner of the General Land Office to issue a certificate that a sale of land, purchased from the State as detached land under the acts of April 1, 1887, and April 8, 1889, was illegal, and that patent could not issue thereon, because (1) the land was not vacant, having been previously filed on by S., and (2) it was not detached land which could be sold under said act, in order that the purchase money paid might be obtained back through the Comptroller under act of April 14, 1883. (Rev. Stats., art. 4159c.) The answer of the Commissioner showed that the issuance of the certificate involved the exercise of judgment, because it did not plainly appear from the records that the title of S. was not forfeited nor the land in question was not detached land. Held, that where such issues were presented the Supreme Court would not determine the question of petitioner's right to the certificate. (P. 159.)

**4.   Mandamus—Jurisdiction of Supreme Court.**

The Supreme Court has none of the powers conferred upon the District Courts to obtain testimony nor to call a jury. It therefore seems that it was not the intent of the law makers to empower this court to issue writs of mandamus except where the facts are undisputed and the right clear and unquestioned. (P. 160.)

**5.   Same.**

The whole matter was committed by the law to the Comptroller who was authorized to act upon the certificate of the Commissioner of the Land Office, but it was never intended that any court should enter into an examination of the question as to the right of the claimant,—else the Legislature would have provided for suit in the District Court or other courts where the machinery would have been adequate to that end. (Pp. 160-161.)

**6.   Act of State Officer—Advice of Attorney General.**

Where the Commissioner of the General Land Office has acted upon a matter within the scope of his authority under the advice of the Attorney General, this court would not undertake to revise such action unless the Commissioner had refused to perform a duty clearly ministerial and plainly defined by law. (P. 161.)

**7.   Mandamus—Acts Demanding Exercise of Judgment.**

The law having submitted to the judgment and discretion of the Commissioner of the Land Office the determination of the existence of the facts required to be certified to the Comptroller as basis for return of the purchase money, his conclusion, both upon the law and the facts, that he cannot certify the requisite facts is conclusive; mandamus will not be issued to require him to make such certificate. (Pp. 161-162.)

ORIGINAL PROCEEDING in Supreme Court to compel by writ of mandamus defendant A. J. Baker, Commissioner of the General Land Office, to issue to plaintiff a certificate that the records of his office show that the sale to R. B. Coleman of survey No. 6 in Frio County was illegal and that no patent could be issued therefor, for the reason (1) that it was covered by an older title, and (2) it was not a sale of detached public lands—the certificate being necessary to secure the refunding of the purchase money. The opinion gives a statement of the pleadings and facts.

*Paul McComb*, for plaintiff, in argument, discussed the facts, insisting that they authorized and required the defendant to issue the certificate contemplated in the act of 24 Legislature (ch. 104, p. 162) to enable plaintiff to have the purchase money refunded.

*M. M. Crane*, Attorney General, *H. P. Brown*, Assistant Attorney General, for defendant.—Plaintiff's petition failing to show any right to said certificate demanded, save and except such as he may have acquired by virtue of his purchase of said survey No. 6 from R. B. Coleman, and said petition alleging that R. B. Coleman acquired no title from the State to said land under his said purchase, plaintiff by his said purchase from R. B. Coleman acquired no title to said land, or right to the purchase money and interest paid on same, and hence shows no right to the certificate demanded by him in this case. Lamb v. James, 87 Texas, 490.

The petition showing that the act demanded of the Land Commissioner is one which involves the exercise of judgment and discretion on the part of said commissioner, and which calls for his action officially, and also necessitates the determination of doubtful questions both of law

and fact, mandamus will not lie to compel the performance of such act. Teat v. McGaughey, 85 Texas, 478; Railway v. Gross, 47 Texas, 429; Bledsoe v. Railway, 40 Texas, 554.

Where the law defining the power of an officer authorizes him to perform an act under conditions, the determination of the existence of which is by such law either expressly or by necessary implication committed to his sole discretion, his decision is binding on other departments of the government. Easton v. Ferguson, 23 S. W. Rep., 919.

BROWN, Associate Justice.—The Twenty-fourth Legislature of the State of Texas passed an act of which the following is the first section:

"Section 1. Be it enacted by the Legislature of the State of Texas: That section 1 of said act (the act of April 14, 1883) be so amended as to hereafter read as follows: 'That upon proper proof being made to the Comptroller that money has been in good faith paid into the State treasury upon lands for taxes, lease and purchase money, for which, on account of conflicts, erroneous surveys, or illegal sales, patents cannot legally issue, or upon lands which patents have issued and have been or may hereafter be legally cancelled, the Comptroller is hereby authorized to issue his warrant for the amount so paid into the treasury in favor of the parties who have in good faith paid such money for which they received no consideration: Provided, that this act shall not apply to surveys the errors in which may be corrected: And provided further, that whenever the official records of the General Land Office shall show that patents for such lands can not legally issue upon such surveys, on account of conflicts, erroneous or illegal sales, or that patents issued on such lands have been legally cancelled, it shall be the duty of the Commissioner to issue his certificate to that effect, which certificate filed with the Comptroller shall be sufficient proof to authorize him to act under the provisions hereof.' " (Rev. Stats., 4159c.)

The plaintiff filed his original petition in this court alleging the following facts: That on the 20th day of September, 1886, Robt. W. Smith purchased State School Survey No. 6 in Frio County, Texas, located by virtue of Land Certificate No. 223, issued to Beatty, Seale & Forwood, and that he complied with the law in regard to such purchases.

That on the 16th day of September, 1890, R. B. Coleman applied to the Commissioner of the General Land Office to purchase Survey No. 6, as detached land, at $2 per acre, under acts of April 1, 1887, and April 8, 1889, of the State of Texas; which application was approved and the land awarded to said Coleman, and he complied with the requirements of the law regarding such sales.

That the plaintiff is the owner, by purchase in good faith, for a valuable consideration, and through a regular chain of title, of all the right, title and interest of said Coleman to said Survey No. 6, and is the owner of moneys that have been paid into the State treasury on account of said attempted sale to Coleman of said survey. That at the time of the sale

to Coleman the equitable title to said Survey No. 6 was not in the State of Texas, but was in Robt. W. Smith, and that the said sale to Coleman was illegal and no patent can legally issue thereunder. That at the time of the attempted sale to Coleman the said Survey No. 6 was not in fact detached land, and for this reason the attempted sale to Coleman was illegal and no patent can legally issue thereunder. That all of the above facts appear on the records of the General Land Office of the State of Texas.

That the plaintiff has made application to the defendant, the Commissioner of the General Land Office, in his official capacity, for a certificate to the effect that the sale of said Survey No. 6 to R. B. Coleman was illegal, and that a patent thereunder can not legally issue; which certificate it was the purely ministerial duty, under the law, of the defendant to issue, but required no exercise of discretion on the part of defendant, but the defendant fails and refuses to issue said certificate to the plaintiff, though often requested so to do. Plaintiff prays this court for a writ of mandamus to the defendant, directing him to issue the plaintiff the certificate of the facts as before stated, and for costs and general relief.

To this petition the defendant, Andrew J. Baker, Commissioner of the General Land Office of the State of Texas, files his answer containing a number of exceptions and setting up matters of fact as follows:

The defendant answers that it does not plainly appear from the records of his office that, at the time of the sale to Coleman, the title to said Survey No. 6 was not in the State of Texas but was in Robt. W. Smith, but, in fact, it appears that said Robt. W. Smith may have forfeited his right to said land by failure to settle upon the same within ninety days after his purchase as required by the terms of his contract of purchase and the law then in force.

Said defendant further states in his answer that it does not plainly appear from the records of his office that Survey No. 6 described in plaintiff's petition was not, at the time of the sale to R. B. Coleman, in fact, detached land, and that from the data in his office he is unable to determine whether such be the fact or not.

That it appears from the records of his office that none of the money paid to the State, on the purchase of said section No. 6 by R. B. Coleman, was paid by the plaintiff.

We have stated the substance only of the answer of the defendant in this case, which is sufficient for an understanding of the points involved; the facts are stated in detail in the answer.

The Commissioner did not refuse to act under this law, but decided not to issue the certificate desired by the plaintiff for the reasons stated in his answer.

Many persons had claims against the State of Texas for money paid as taxes, which it was claimed were improperly collected, and for lands purchased and leased from the State under circumstances that the claimants did not get the use of the land, or in case of purchase were not able to secure patents therefor. The Act of April 14, 1883, amended by the

act now under consideration, did not provide for all classes of such claimants, nor did it provide the means of making proof of the facts which were necessary to establish the right to a return of the money. The act quoted above undertook to remedy these defects.

The State might have given permission to claimants to sue in the courts to establish their claims, but it chose to submit the matter to the Comptroller of the State, and, in order to enable him to perform the duties prescribed, that act provided that the certificate of the Commissioner of the General Land Office should be sufficient evidence of the facts certified. By the terms of this act the parties who paid the money to the State in good faith are alone entitled to have it returned. The law does not include purchasers from nor assignees of such party. It was the policy of the Legislature not to complicate the proceeding before the Comptroller, nor to burden that officer with the determination of questions arising out of sales and transfers of land or assignments of claims. It provided for an ex parte proceeding, and the only sure means of adjudicating the claims rightly in such proceeding was to deal alone with the original claimants. The plaintiff, not being a party who paid any of the money in the purchase of the section of land in question, was not entitled to receive the money from the State, and therefore had no right to demand the certificate from the Commissioner of the General Land Office. He can not, for that reason, maintain this action, and we might dispose of this case upon this point alone; but we think it proper, in view of the public interest involved, to pass upon other questions presented.

It is a general rule of law, often asserted by this court, "that a writ of mandamus will not issue against a public officer, unless it be to compel the performance of an act clearly enjoined upon him by law, which is ministerial in its character, and neither involves the exercise of discretion nor leaves any alternative." Arberry v. Beavers, 6 Texas, 465, and cases cited; Railway v. Randolph, 24 Texas, 329; Bledsoe v. Railway, 40 Texas, 557; Decatur v. Paulding, 14 Pet., 497.

In the case of Commissioner v. Smith, 5 Texas, 479, Judge Wheeler said: "The distinction between ministerial and judicial and other official acts seems to be that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial." The certificate which was required to be issued by the Commissioner of the General Land Office was not the mere statement of a fact as shown by his records, but it must contain a conclusion, both of law and fact, derived from an examination of his records and a knowledge of the law applicable to the facts. As shown in this case, the question as to whether or not the purchase by Smith was still in force depended upon facts not of record in the General Land Office and upon a determination of what the law is as applied to the facts ascertained. It likewise appears from the answer of the Commissioner that to determine whether the sur-

vey in question was a detached section under the law, required additional evidence to that which was found in the records of the Land Office. Even if all these facts had been upon the records of the Land Office, the law required the Commissioner to determine these questions: (1) Was Smith's purchase forfeited, and (2) was the survey a detached section under the law at the time that it was sold to Coleman? He has acted in making the examination, and is not able to arrive at a conclusion which he can certify in accordance with the statute. We think that it is clear that the duty, here enjoined upon the Commissioner, involves the exercise of his judgment both upon the facts and the law of the case, and that when he has acted it is not within the province of this court to assume the duty of examining into the records of his office to determine whether or not he has arrived at a correct conclusion.

The Constitution, as amended in 1891, authorizes the Legislature to confer original jurisdiction on the Supreme Court to issue writs of mandamus in such cases as may be specified, except as against the Governor of the State. Article 946, Rev. Stats., reads thus: "The Supreme Court, or any justice thereof, shall have power to issue writs of habeas corpus as may be prescribed by law; and the said court, or the justices thereof, may issue writs of mandamus, procedendo, certiorari, and all writs necessary to enforce the judisdiction of said court; and in term time or vacation may issue writs of quo warranto or mandamus against any district judge or officer of the State government, except the Governor of the State." This court is not provided with the means of ascertaining the facts in any controversy. It has none of the powers conferred by law upon the District Court to take depositions, issue subpoenas, writs of attachment or other process necessary to the trial of issues of fact; and in this court the right of trial by jury, which is secured by the Constitution to every person demanding it, could not be accorded. We therefore conclude that it was not the intention of the framers of the Constitution, or the Legislature, to empower this court to issue writs of mandamus, except where the facts were undisputed and the right clear and unquestioned. In order that we might determine the questions of fact between the plaintiff and the defendant in this case, it would be necessary that we should enter into an examination of the records of the General Land Office, either by an inspection of the books or by hearing witnesses who had examined the same, or by the production of certified copies of all the instruments therein contained relating to the subject matter, and from this evidence to arrive at the conclusion which the law requires the Commissioner to draw and certify from the same facts, thus revising the action of the Commissioner. It was the policy of the Legislature to commit this whole matter to the determination of the Comptroller of the State, and to permit the production of the certificate of the Commissioner of the General Land Office as sufficient proof, when the records of that office were such that he could give such certificate; but it was never intended that any court should enter into an examination of the question as to the right of a claimant, else the Legislature would have provided for suit

in the District or other court of the State, where the machinery of the court would have been sufficient and appropriate to attain this end.

The Commissioner of the General Land Office is one of the executive officers of the State. (Constitution, art. 4, sec. 1.) The Attorney General is required, by the Constitution, "to give legal advice in writing to the Governor and other executive officers when requested by them." (Constitution, art. 4, sec. 22.) While it is true that, under the Constitution and laws of the State, this court has power to issue a mandamus to compel the performance by the Commissioner of the General Land Office of a duty clearly enjoined upon him by law, it will not assume to control his discretion in matters where the law has reposed in him the exercise of his judgment in determining the existence or non-existence of the given state of facts from the evidence furnished by the records of his department. The advice of the Attorney General would not bind the court as to the law, if the matter were before it for adjudication, but the fact that defendant acts upon the opinion of that officer is proper to be considered in determining whether the act to be done is purely ministerial, and we would not undertake to revise the action of the Commissioner, based upon the advice of his legal adviser provided by the Constitution of the State, except it be a very clear case in which he had refused to perform a duty clearly ministerial and plainly defined by law (Decatur v. Paulding, 14 Pet., 497).

In the case of Decatur v. Paulding, supra, the plaintiff claimed that she was entitled to receive money from the Government under an Act of Congress, and also under a joint resolution of same date. The Secretary of the Navy, upon the advice of the Attorney General of the United States, held that she was entitled to receive under but one. She took the money under one, and brought an action for mandamus to compel the Secretary of the Navy to allow her claim under the other. The trial court awarded the writ of mandamus. The Supreme Court of the United States, in an opinion delivered by Chief Justice Taney, in passing upon the question as to whether the act was ministerial or not, said: "The duty required by the resolution was to be performed by him (the Secretary of the Navy) as the head of one of the executive departments of the government, in the ordinary discharge of his official duties. In general, such duties, whether imposed by act of Congress or by resolution, are not mere ministerial duties. The head of an executive department of the government, in the administration of the various and important concerns of his office, is continually required to exercise judgment and discretion. He must exercise his judgment in expounding the laws and resolutions of Congress, under which he is from time to time required to act. If he doubts, he has a right to call on the Attorney General to assist him with his counsel; and it would be difficult to imagine why a legal adviser was provided by law for the heads of departments, as well as for the President, unless their duties were regarded as executive in which judgment and discretion were to be exercised."

As we said before, there might be a case in which the Commissioner

of the General Land Office would be subject to a writ of mandamus, for refusing to perform a plain duty enjoined upon him by law, but the facts of this case do not warrant us in issuing that process in the case now before us. And we think that the fact that the Commissioner of the General Land Office is an executive officer of the State, and that the Legislature has by this law submitted to his judgment and discretion the determination of the existence or non-existence of certain facts, his conclusion, both upon the law and the facts to be expressed in his certificate, clearly establishes that this is not such a ministerial act as would justify this court in reviewing his action in the performance of that duty.

It is therefore ordered that the plaintiff take nothing by this suit; that the writ of mandamus be denied, and that the defendant Andrew J. Baker go hence without day and recover of the plaintiff and his sureties all costs in this behalf expended, for which execution may issue out of this court.

*Mandamus refused.*