**HURLEY et al. v. CAMP et al.  (No. 742.)**

(Court of Civil Appeals of Texas. Beaumont.
Oct. 24, 1921. Rehearing Denied
Nov. 9, 1921.)

**1. Depositaries ⚫══6—County board may reject any and all bids, regardless of rate of interest offered.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 2440–2453, gives the county commissioners' court discretion in selecting official depository of funds to reject any and all bids, regardless of whether the rejected bid offered the highest rate of interest, and the exercise of this discretion cannot be interfered with by the district court unless abuse is clearly shown.

**2. Depositaries ⚫══6—One attacking appointment has burden of showing abuse of discretion.**

A bank which sought to set aside the action of the county board in rejecting its bid as a depository and selecting another had the burden of showing that the board grossly abused its discretion.

**3. Depositaries ⚫══6—Evidence held insufficient to show that county board abused discretion in selection of depository.**

In suit by a bank offering the highest rate of interest as depository to set aside the action of the county board selecting another, evidence *held* insufficient to show that there was an abuse of discretion by the board.

Appeal from District Court, Hardin County; J. L. Manry, Judge.

Action by H. G. Camp and others against L. G. Hurley and others, constituting the Commissioners' Court of Hardin County, consolidated with an action by Citizens' National Bank against the same defendants. From a judgment enjoining the county board from transferring funds from the Citizens' National Bank as depository, but refusing mandatory writ to compel the board to appoint said bank as county depository for a further period, defendants appeal. Judgment so far as granting injunction reversed, and in refusing mandatory writ affirmed.

A. D. Lipscomb, of Beaumont, Coe & Briggs and Coe & Combs, all of Kountze, and Oswald S. Parker, of Beaumont, for appellants.

E. B. Pickett, Jr., of Liberty, and W. W. Cruse, of Beaumont, for appellees.

O'QUINN, J. This controversy grew out of the selection of a county depository by the commissioners' court of Hardin county, Tex., at the February term, 1921. This is the second appeal. For report of opinion on first appeal, see Hurley v. Citizens' Nat. Bank, 229 S. W. 663.

Appellee Citizens' National Bank of Sour Lake, on February 14, 1921, filed its original petition in suit No. 3951, in the district court of Hardin county, against the commissioners'

court of said county, the object and result of which is shown in 229 S. W. 663. Afterwards, while said appeal was pending, on March 23, 1921, suit No. 3981 was filed by H. G. Camp, A. W. Roark, H. L.Graham, M. F. Yount, W. E. Lee, T. J. Rothwell, N. M. Morrison, as resident citizens and taxpayers of Hardin county, and Citizens' National Bank of Sour Lake, as plaintiffs, against L. G. Hurley, Albert Cook, Hardy Chance, Archie Wilkins, J. J. Jordan (who composed the commissioners' court of Hardin county), as defendants. The plaintiff Citizens' National Bank, in cause No. 3951, filed its amended original petition on April 4, 1921, joining in as defendants the county of Hardin and Hardin County State Bank, which said amended petition contained the same allegations as the original petition in cause No. 3981. On said April 4, 1921, the Hardin County State Bank filed its petition in intervention in cause No. 3981. On April 11, 1921, the said causes, Nos. 3951 and 3981, were consolidated, and thereafter designated and carried on the docket of said court as cause No. 3981, styled H. G. Camp et al. v. L. G. Hurley et al.

The following is the statement of the nature and result of the suit taken from appellees' brief:

"As shown above, the appellee Citizens' National Bank of Sour Lake, on February 18th, filed its original petition in suit No. 3951, and afterwards on April 4th filed its first amended original petition against L. G. Hurley, Albert Cook, Hardy Chance, Archie Wilkins, E. A. Jordan (this being error, and was intended for J. J. Jordan), the commissioners' court of Hardin county, the county of Hardin, and the Hardin County State Bank, as defendants.

"And the allegations in the first amended original petition were the same as the allegations contained in plaintiffs' original petition filed in cause No. 3981 on March 23d, the plaintiffs in this suit No. 3981 being H. G. Camp, A. W. Roark, H. L. Graham, M. F. Yount, W. E. Lee, T. F. Rothwell, N. M. Morrison, and Citizens' National Bank of Sour Lake, and the defendants being L. G. Hurley, Albert Cook, Hardy Chance, Archie Wilkins, J. J. Jordan, and commissioners' court of Hardin county. On April 11th the said two suits, Nos. 3951 and 3981, were, as already above set forth, duly consolidated, and thereafter proceeded as No. 3981, Camp et al v. Hurley et al.

"Appellees, in their petition alleged that, when the commissioners' court of Hardin county met on February 14, 1921, to select a depository for said county, three bids were submitted to said court, to wit: (1) A bid by Citizens' National Bank of Sour Lake, offering 6⅛ per cent.; and (2) a bid by Sour Lake State Bank offering 4½ per cent.; and (3) a bid by Hardin County State Bank, offering 4 per cent.; and that three members of said court, viz., County Judge Hurley and Commissioners Cook and Chance, voted to accept the bid of the Hardin County State Bank offering only 4 per cent. interest for the county funds, appellees further alleging that said three members of the commissioners' court

⚫══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
234 S.W.—37

who voted to accept the bid of the Hardin County State Bank, acted arbitrarily and fraudulently, and transcended their authority and grossly abused the discretion vested in them by law, it being also alleged that the appellee, Citizens' National Bank of Sour Lake, which offered 'to pay the largest rate of interest per annum for said funds,' was 'a safe and suitable banking corporation in every respect as depository for said funds, and is now and has been for the past period of two years depository for said funds,' and said three members of the commissioners' court who voted to accept the bid of the Hardin County State Bank 'designed to deliberately cause disadvantage and do injury to the plaintiff by depriving it of the funds it now holds as county depository for said Hardin county, and to willfully and deliberately grant and extend to said Hardin County State Bank a special favor and privilege by accepting its said bid, although having no fact or reason whatever upon which to refuse or reject the bid of the plaintiff bank, notwithstanding the fact that plaintiff bank was then and now is, as above alleged, in every respect a safe, suitable, and solvent depository for said county funds, and in all respects equipped and qualified to properly safeguard and handle said funds, and in every wise to conduct the affairs of such depository in strict accordance with the law in such cases made and provided, and also for the welfare, advantage, and benefit of the citizens and taxpayers of said county and whoever else may have or be interested in such affairs.' Also appellees alleged that, should defendants be permitted to select said Hardin County State Bank as depository, their arbitrary, unlawful, and fraudulent act and conduct in so doing would cause and result in irreparable damage and loss to the plaintiff bank, in that said bank is now the county depository for said Hardin county, and as such holds on deposit a large amount of funds, at this time approximating the sum of $350, and should defendant be allowed to select said Hardin County State Bank as county depository of said county, the plaintiff bank would be required to pay over all of said funds in the course of a short period, which would result in disadvantage, injury, and loss to said bank; and, further, said bank would lose the profits that may be realized upon such funds by holding and handling same as depository for the ensuing period of two years, and, further, that benefit, advantage, and profit would be awarded to and gained by said Hardin County State Bank.' The petition further alleging that defendants will, if they are permitted to proceed 'with their designs and intentions, arbitrarily, willfully and unlawfully deprive plaintiffs and the said county of Hardin and all the citizens and taxpayers thereof of the higher rate of interest which the plaintiff bank proposed to pay on such funds, and that loss in the whole of the two years covered by the period for which such depository may exist will amount to at least several thousand dollars, all of which will be a total and irreparable loss, waste, damage, and injury to these plaintiffs and other citizens and taxpayers of Hardin county similarly situated, and all of this will be brought about by and result from the act of said defendants in transcending their authority and in grossly abusing their discretion, in arbitrarily, unlawfully, and fraudulently accepting the bid and proposal of said Hardin County State Bank, notwithstanding the fact that the bid and proposal of plaintiff bank offered a rate of interest which was materially higher.'

"The court, on considering the petition filed by plaintiffs in cause No. 3981, in chambers, on March 17, 1921, granted the temporary injunction prayed for by appellees, restraining defendants from accepting any bond which might be tendered to them by said Hardin County State Bank as depository for said county, and from ordering or directing a transfer of the funds of said county from the Citizens' National Bank to the Hardin County State Bank, and further from proceeding in any manner to treat with, consider, regard, or recognize said Hardin County State Bank as the depository for said county. The case upon its merits came on for trial on April 11th, and on April 13th, the trial court rendered its final judgment perpetuating the temporary injunction which the court had granted on March 17th, but denied appellees the further relief prayed for, seeking a mandamus and mandatory writ of injunction to require the commissioners' court to select the appellee, Citizens' National Bank, as depository for said Hardin county, and to such judgment of the court refusing their prayer for such mandamus and mandatory writ of injunction, the appellees in open court duly excepted, and to such judgment of the court perpetuating the temporary injunction, as above stated, the appellants duly excepted and gave notice of appeal, thereafter perfecting their appeal by the filing of proper appeal bonds."

Appellants' first assignment of error is as follows:

"The trial court erred in rendering judgment reviewing and reversing the action of the commissioners' court of Hardin county; the unrebutted evidence showed that the action in question was based upon good and sufficient reasons, and it involved a matter requiring the exercise of discretion on the part of the commissioners' court in the administration of the county's business."

This assignment is followed by the following proposition:

"To act as depository of county funds is an employment in a position of trust and confidence, and it is the duty of those representing the county in making selection of one for such service to regard only the interest of the county and to eliminate any and all bidders in whom they for any reason lack confidence; and therefore uncontradicted proof of the existence of such lack of confidence or other sufficient reason for rejection is conclusive on the question of abuse of discretion."

To this assignment and proposition, appellees replied by their first counter proposition, as follows:

"Under the statutes of this state the commissioners' court is vested with a broad discretion in governing and controlling the financial affairs of a county, including the selection of a county depository, but still, in the exercise of such authority and power, the court will not be allowed to grossly abuse that discretion and transcend its lawful authority, and when it

commits such a transgression from a fraudulent or any other improper motive, such as personal animosity, perversity of will, passion, prejudice, partiality or favoritism, or moral delinquency, or if the court has acted arbitrarily or in a capricious manner, an injunction will lie at the instance of a taxpayer or other injured party to restrain said court from enforcing an order made by it which has so grossly abused the rightful discretion vesting in it under the law and transcend the power and authority possessed by it under the statutes."

[1] The law authorizes and requires the commissioners' court to select a depository for the county funds. Vernon's Sayles' Civil Statutes, arts. 2440–2453. The law vests the commissioners' court with discretion in the selection of said depository, and authorizes them to reject any and all bids, and this regardless of whether the rejected bid was highest. Vernon's Sayles' Civil Statutes, art. 2442; Hurley v. Citizens' National Bank, 229 S. W. 663; Hurley v. Buchanan, 233 S. W. 590; Reagan v. Iron County Court et al., 226 Mo. 79, 125 S. W. 1140; Barrett v. Stoddard Co. et al., 246 Mo. 501, 152 S. W. 43; Donna Independent School District v. First State Bank, 227 S. W. 974.

Evidently it was not the intent of the Legislature to require the selection of the bank offering to pay the highest rate of interest, for the law specifically authorized the commissioners' court to reject any and all bids, thus permitting them to exercise their discretion in the premises. We think a consideration of the history of the act as a whole clearly shows this. The original act was passed in 1905, and provided for the selection of state, county, and city depositories. Acts 29th Legislature, 1905, p. 387. In section 3 of the original act, relating to the selection of state depositories, it provided that:

"The treasurer may, with the approval of the comptroller and Attorney General, reject any and all bids, *and in any case the bank or banking institution offering the highest interest from each senatorial district shall be selected, if any.*" (Italics ours).

It is thus seen that the discretion given in the selection of a state depository was limited to the selection of the bank offering to pay the highest rate of interest, if any depository was selected, though, in the exercise of that discretion any and all bids might be rejected. In section 22, relating to the selection of a county depository, it was provided that—

" * * * And to select as the depository of all the funds of the county the banking corporation, association or individual banker offering to pay the largest rate of interest per annum for said fund; provided, the commissioners' court may reject any and all bids."

It will be noticed that the clause limiting the selection to the bank offering the highest rate of interest as the depository in the selection of a state depository was omitted from the law regulating the selection of county depositories. These two sections (3 and 22) were originally parts of the same bill, passed at the same time, and it is evident that the Legislature did not intend to and did not limit the discretion to be exercised by the commissioners' court in the selection of a county depository to the selection of the bank offering to pay the highest rate of interest. Later the Legislature amended the law relating to the selection of a state depository (Acts 1919, p. 266), and eliminated the clause requiring the selection of the bank offering to pay the highest rate of interest as a state depository, if any was selected, leaving the law to read: "Provided said board may reject any or all bids"—thus enlarging the discretion to be exercised in that instance to the same extent as that originally granted to the commissioners' court in the selection of a county depository, thus emphasizing, we think, the intent to vest full discretion in the persons exercising the power to select depositories.

Since it is the law that the commissioners' court is vested with discretion in the selection of a depository, and that in the exercise of that discretion it may reject any and all bids, it follows that their action in making such selection cannot be questioned and set aside by the district court, unless an abuse of said discretion is clearly shown. The whole case then turns on the question of whether such abuse of discretion is shown by the record here as to sustain the judgment of the court below. The learned judge who tried the case below filed his findings of fact and conclusions of law, in which he found that the two commissioners and the county judge, who voted to reject appellee's bid of 6⅛ per cent., and to accept appellant Hardin County State Bank's bid of 4 per cent., acted arbitrarily, and transcended the authority, and grossly abused the discretion, which the law gave them in the selection of a depository, and that they were grossly negligent and acted without due consideration, and were actuated to an undue degree and improper extent by favoritism to appellant, Hardin County State Bank; that they were prompted and induced in so voting by a personal desire to have the depository located at the county site, to which they gave undue importance; and concluded, as a matter of law, that the defendants Hurley, county judge, and Cook and Chance, commissioners, did not "properly, and with due care, exercise the discretion vested in them by law when voting to select the Hardin County State Bank as depository for Hardin County of February 14, 1921, but, on the contrary, in so voting, they acted arbitrarily were grossly negligent, and transcended the authority and grossly abused the discretion which, under the law, it was their duty to exercise in the

matter of selecting a depository for said county, and, accordingly, their actions and order in selecting said Hardin County State Bank as depository for said county should be vacated and set aside."

[2, 3] We have carefully considered the whole record, and the evidence, we think, fails to show that, by the refusal to award the depository to the plaintiff Citizens' National Bank, the commissioners' court—that is, the two commissioners and the county judge who voted against the acceptance of plaintiff's bid and voted for the selection of defendant Hardin County State Bank, although its bid was 2⅛ per cent. lower than plaintiff's—grossly abused their discretion in the premises. The burden was upon plaintiffs to establish their allegations of abuse of discretion or fraud, and, after carefully considering the whole record, we do not believe this has been done. We find no evidence in the record to sustain said charges, but, to the contrary, the evidence amply sustains the action of said officers. The record discloses that, at the time of the selection of a depository, to wit, February 14, 1921, the county judge, Hurley, and the two commissioners, Cook and Chance, who voted against appellee and for appellant Hardin County State Bank, knew, in a general way, that appellee Citizens' National Bank had been in existence for only about four years, and that its former cashier, one Connolly, had embezzled its funds, stolen and hypothecated several thousand dollars of the shares of an affiliated concern, and, at the time of the selection of a depository, was under several indictments for violations of the banking laws; that before he was discharged by appellee he had invested more than $100,000 of the deposits in automobile paper of very questionable value; that he was not replaced by the present cashier until about September, 1920, only about six months prior to the meeting of the commissioners' court at which the selection of a depository was made, out of which this litigation grew; that appellee Citizens' National Bank had invested more in a banking house, grounds, and fixtures than its whole capital and surplus combined; that its main patronage consisted of oil business—that is, business growing out of the production of oil, a business that is variable, constantly fluctuating, and uncertain.

County Judge Hurley and Commissioners Chance and Cook each testified, in substance, that he had no thought or intent to do injury to or in any way damage plaintiff, Citizens' National Bank, or to confer special favor on Hardin County State Bank, but that he acted for what he believed to be the best interest and convenience of the people of Hardin county, and especially for the safety of the county's funds, and this is in no way disputed, except inferentially, and by way of conclusion, apparently based upon the fact

that plaintiff Citizens' National Bank's bid was 2⅛ per cent. higher than Hardin County State Bank's bid, and also that Hardin County State Bank was situated at the county site. Each of them denied that he had any ill will against plaintiff bank, or that he entered into any collusion with any one as to the matter, or that he was actuated in his vote by favoritism toward Hardin County State Bank, but, to the contrary, each testified that he endeavored to act for the best interest of the county and the safety of its funds; and we find that there is nothing in the record to the contrary.

The record further shows, as reflected in the testimony of W. E. Lee, president of plaintiff bank, that in January, 1920, it was discovered that plaintiff's cashier, one Connolly, was short some $1,100, but that he was not discharged at that time; that in July of same year it was discovered that Connolly had invested more than $100,000 of the bank's deposits in automobile paper that was unauthorized, and which the record shows to have been of very questionable value, and still he was not discharged until September 3d, practically nine months after his discovered shortage. The record does not disclose the dates when, but does show that said Connolly was indicted for some eleven different criminal acts in connection with the bank's business. The plaintiff bank had been selected as county depository in 1919, at which time no suspicion as to its management or solvency had arisen, its bid then being the reasonable rate of 4 per cent. In this instance it again bids and offers what, to the minds of the majority of the commissioners' court, was the unusual rate of 6⅛ per cent. which must have, to their minds, indicated a stressing necessity for the retention of the funds already in its possession. Plaintiff's president, when testifying, said, in answer to questions regarding the history of the bank under the management of its cashier, Connolly: "I did realize it would cast suspicion on my bank." The controlling majority of said court testified that they were not acquainted with the present cashier of plaintiff bank, but were well acquainted with and had full confidence in the integrity and capability of the officers and directors of appellant Hardin County State Bank, and in the solvency of said bank. The record further shows that, when the commissioners tied in their vote in the selection of a depository for the county, County Judge Hurley took time and made special investigation as to the fitness and safety of appellee as a depository before voting, and in doing so expressed himself as suspecting appellee was not solvent, and that the size of its bid looked suspicious to him.

Powers of officers are classified as discretionary or ministerial. Over the former the courts have no control, except where the dis-

(234 S. W.)

cretion has been abused. Where in the discharge of official duty the power has been given by law to an officer to determine a question of fact, his determination is final, in the absence of any controlling provisions of the statute, provided he has not been guilty of an abuse of his discretion. The rule is so broad that it is universally held that, while officers are liable for negligence in the performance of ministerial duties, no such liability is recognized in the case of discretionary or judicial duties. 29 Cyc. 1442, 1443.

It is a rule of law that official acts are presumed to have been done in good faith. The first and last duty of an agent is to be true to his principal and sacredly discharge the trust reposed in him. It therefore follows that, in the discharge of that trust, in the exercise of the discretion given him, when a doubt arises in any transaction wherein he is acting for his principal, he ought to resolve that doubt in behalf of his principal, and refuse the other party; and this is true, even though he may act on misinformation or wrongfully conceived notions of the facts, and his act an error in judgment, for it is not a question of the correctness of his act or judgment, but of his good faith only.

The members of the commissioners' court are the county's agents and representatives, and under oath and bond to protect and conserve its interests. Neither an injunction nor mandamus will lie against them to control them in discharging an official duty that requires the exercise of discretion. The act of selecting a depository for the county funds is one that requires the exercise of judgment and discretion. Whether they decided right or wrong is not the question. Having jurisdiction to decide at all, it was their duty to decide as they thought best for the interest of their principal, the county, and the courts have no power whatever, under those circumstances, to review their action by injunction, in the absence of a clear showing that said discretion had been abused. Riverside Oil Co. v. Hitchcock, 190 U. S. 318, 23 Sup. Ct. 698, 47 L. Ed. 1074; Bates & Guild Co. v. Payne, 194 U. S. 109, 24 Sup. Ct. 595, 48 L. Ed. 894; Carrick v. Lamar, 116 U. S. 423, 6 Sup. Ct. 424, 29 L. Ed. 677; 29 Cyc. 1432.

"The rule is firmly established that the judiciary will not interfere with the executory officers in the performance of duties which are discretionary in their nature or involve the exercise of judgment. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts." 22 R. C. L. § 170, p. 490; Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62.

The law may be invoked to compel an official act involving the exercise of discretion, but it cannot compel such discretion to be exercised in any particular way. 26 Cyc. 158, 22 R. C. L. § 170, p. 490.

The commissioners' court is a special tribunal created by statute and clothed with executive power to receive bids, and from the bidders to select a depository for the county funds, and no provision is made by law for an appeal from their acts, or a review thereof by the courts, and hence their acts in performing said duty, in the absence of fraud, or the abuse of their discretion, vested in them by law, is final. It may be said, in general, that, when the statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine or controvert the sufficiency of the evidence on which he acted. In Carrick v. Lamar, supra, it is said:

"It is settled by many decisions of this court that, in matters which require judgment and consideration to be exercised by an executive officer, the judgment on which will depend upon his discretion, no writ for a mandamus to control his action will issue. It is only for ministerial acts, in the performance of which no exercise of judgment or discretion is required, that the writ will be granted."

See, also, 22 R. C. L. § 174, p. 494; Decatur v. Paulding, 14 Pet. 497, 599, Append. 10 L. Ed. 559, 609; 29 Cyc. (Mandamus) 158; De Poyster v. Baker, 89 Tex. 155, 34 S. W. 106; Sansom v. Mercer, 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505; Brown v. Reese, 67 Tex. 318, 3 S. W. 292; Ewing v. Cohen, 63 Tex. 483; Bledsoe v. Railway, 40 Tex. 557; Commissioner v. Smith, 5 Tex. 479.

We come now to consider appellees' cross-assignment of error, in which it is contended that the court erred in not granting a mandatory injunction and writ of mandamus commanding and compelling the commissioners' court to accept the bid of appellee Citizens' National Bank, submitted to it on February 14, 1921, and selecting said bank as depository of all the funds of Hardin county for the ensuing two years.

What we have said above disposes of this assignment. The selection of a depository by the commissioners' court was an act involving judgment and discretion on the part of the members of said court. It is well-settled law that a mandamus will not issue to an officer where discretion and judgment are to be exercised by the officer. De Poyster v. Baker, 89 Tex. 155, 34 S. W. 106; Sansom v. Mercer, 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505; Brown v. Reese, 67 Tex. 318, 3 S. W. 292; Ewing v. Cohen, 63 Tex. 483; Bledsoe v. Railway, 40 Tex. 557; Commissioner v. Smith, 5 Tex. 479; 22 R. C. L. § 174, p. 494; 29 Cyc. (Mandamus) 158; Decatur v. Paulding, 14 Pet. 497, 599, Append.,

10 L. Ed. 559, 609; Carrick v. Lamar, 116 U. S. 423, 6 Sup. Ct. 424, 29 L. Ed. 677; Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62. The court did not err in refusing to grant the writ.

The judgment of the lower court, in so far as it perpetuated the injunction here appealed from, is reversed, and said injunction dissolved. Said judgment, in so far as it refused the writ of mandamus prayed for by appellees, is affirmed.