

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LILLI M. HEINRICH, | § | |
| Appellant/Cross-Appellee, | § | |
| | § | No. 08-15-00328-CV |
| v. | § | Appeal from the |
| MICHAEL V. CALDERAZZO, MARK | § | |
| AUSTIN, STANLEY HAYS, TYLER | | County Court at Law No. 3 |
| GROSSMAN, RALPH JOHNSON, | § | |
| JERRY VILLANUEVA, WILLIAM F. | | of El Paso County, Texas |
| STUDER, TERRI GARCIA, DR. | § | |
| ROBERT D. TOLLEN, JOHN DAVIS III, | | (TC# 2004-2313) |
| et al., | § | |
| Appellees/Cross-Appellants. | § | |

**O P I N I O N**

Appellant/Cross-Appellee Lilli Heinrich ("Heinrich") appeals the decision of the trial court granting a directed verdict against her. Heinrich contends she raised a fact issue as to whether the pension she had been receiving for seventeen years had been unilaterally reduced by The Board of Trustees of the El Paso Firemen & Policemen's Pension Fund in violation of a state law prohibiting retroactive reductions to pension benefits. In a cross-appeal, the Board Members (Appellees/Cross-Appellants) contend the trial court abused its discretion in refusing to award them taxable court costs as the prevailing parties at trial. They contend Heinrich did not show "good cause" why she should be exempted from Texas Rule of Civil Procedure 131, which entitles

the successful party in a lawsuit to recover taxable costs. For the following reasons, we affirm.

## BACKGROUND

Charles D. Heinrich, a member of the El Paso Police Department, was killed in the line of duty when he was shot in the head while attempting to question a suspect. Shortly after his death in 1985, his widow, Lilli Heinrich, applied to receive his pension from the El Paso Firemen and Policemen's Pension Fund. The Fund began paying Henrich monthly survivor benefits equal to 100 percent of the monthly pension her husband had earned. How those payments were apportioned is the source of litigation that has dragged on since 2005. Heinrich received the same monthly payment from 1985 until 2002. That year, she received a letter from the Fund's Board of Trustees noting their records indicated her son Christopher had now turned twenty-three and requested proof he was a qualified child for purposes of receiving his portion of the monthly pension. The Board asserted the Fund's bylaws assigned only two-thirds of the recurring payment to Heinrich, the other third being paid to her on behalf of her son, who had been a minor at the time of his father's death. Those bylaws mandated a one-third payment to surviving children but required the payments cease once the child turned nineteen, or twenty-three if attending a qualified educational institution. Heinrich asserted that the 1985 Board had voted to award her 100 percent of her husband's pension in her own right in recognition of his outstanding service to the city.[1] The Board did not credit her assertion and reduced her monthly payment by one-third. It further reduced her monthly payment to recover overpayments made to Heinrich while her son was no longer a qualified child under the pension plan. Henrich filed suit, alleging the Board Members[2]

---

[1] The Chuck Heinrich Memorial Park in El Paso, TX, which bears her husband's name, is dedicated to slain El Paso police officers.

[2] Originally, the City of El Paso, the El Paso Firemen & Policemen's Pension Fund, the Fund's Board of Trustees,

2

had violated the statute governing the Fund by reducing her benefits retroactively. In response, the Board Members filed pleas to the jurisdiction, asserting governmental immunity. The trial court denied the pleas and our court affirmed on appeal. *City of El Paso v. Heinrich*, 198 S.W.3d 400, 408 (Tex.App.--El Paso 2006), *rev'd on other grounds*, 284 S.W.3d 366, 377 (Tex. 2009). In a precedent-setting opinion, the supreme court granted review to clarify what types of relief may be sought without legislative consent and concluded Heinrich had pleaded sufficient facts to raise an *ultra vires* claim, which constitutes an exception to governmental immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369 (Tex. 2009). Thus, her claims for prospective declaratory and injunctive relief against the board members could proceed. *Id.*, at 380.

On remand, the Board Members asserted Heinrich was unable to produce any evidence that the required statutory procedures had been followed that allowed for increasing a beneficiary's payment, which the 1985 Board would have been required to comply with to legally raise her benefits from the standard two-thirds pension to the 100 percent she claims she was awarded. The trial court agreed and granted the Board Members' motion for directed verdict. The trial court also assessed court costs against the party that incurred the costs instead of against Heinrich, stating the litigation was unnecessarily prolonged due to their poor handling of records and communication with Heinrich. This appeal followed.

## DISCUSSION

### Directed Verdict

---

and the members of the board individually were all included as defendants. Because the Texas Supreme Court held that a suit for *ultra vires* acts could only be maintained against the acting government officers in their official capacities, all parties were dropped except for the individual board members. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009).

3

In her sole issue on appeal, Heinrich contends the trial court erred in granting a directed verdict because the evidence presented raised a fact issue as to whether she had been initially awarded 100 percent of her husband's pension in her own right.

### *Standard of Review*

A directed verdict is proper when there is no evidence to support a material issue in the case. *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). There is "no evidence" of a material issue when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

In reviewing whether a directed verdict was proper, we examine the evidence in the light most favorable to the party suffering the adverse judgment. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). Evidence is legally sufficient if it rises to a level that would allow a reasonable and fair-minded jury to make the finding. *City of Keller*, 168 S.W.3d at 810. But evidence that is so weak "as to do no more than create a mere surmise or suspicion" of a fact is, in legal effect, no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)(*quoting Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### *Applicable Law*

To fall within the *ultra vires* exception to sovereign immunity, a suit to require state officials to comply with a statutory or constitutional provision must allege, and ultimately prove, that the official acted without legal authority or failed to perform a purely ministerial act.

4

*Heinrich*, 284 S.W.3d at 372. "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991)(*citing Depoyster v. Baker*, 89 Tex. 155, 34 S.W. 106, 107 (1896)). *Ultra vires* suits do not attempt to exert control over the state; rather, their purpose is to reassert the control of the state over wayward officials. *Heinrich*, 284 S.W.3d at 372.

### *Analysis*

Here, Heinrich claims she was originally awarded 100 percent of her husband's pension in her own right in 1985 and that the Board Members acted without legal authority when they lowered her benefits in 2002. She relies on Section 10A(a)(1) of Article 6243b of the Revised Civil Statutes of Texas, which prohibits retroactive reductions of pension benefits. TEX.REV.CIV.STAT.ANN. art. 6243b, § 10A(a)(1). To prevail on her *ultra vires* claim, Henrich needed to demonstrate that she had been legally awarded 100 percent of her late husband's pension and that by reducing her monthly payment the Board Members failed to perform the ministerial act of paying her full benefits or reduced her benefits without legal authority. *Heinrich*, 284 S.W.3d at 372.

At the time of Charles Heinrich's death, the bylaws governing the pension fund provided that upon the death of a member a qualified spouse would receive two-thirds of the member's final pension. Any qualified child or children were also entitled to receive a two-thirds pension. But if both a qualified spouse and a qualified child survived the member, the spouse would receive a two-thirds pension payment and the qualified child or children would receive a one-third pension, totaling 100 percent of the member's pension entitlement. The bylaws further provided that under

5

no circumstances would the qualified spouse and qualified child or children receive a combined pension equaling more than 100 percent of the member's pension. When a qualified child ceased to be a qualified child—defined as a child under the age of nineteen or a full-time student under the age of twenty-three—the child's benefits would terminate. The governing statute, Article 6243b, authorized the Board to adjust the benefit payments only if all the following conditions were sequentially complied with:

> (1) the change must be approved by a qualified actuary selected by a four-fifths vote of the Board; the actuary's approval must be based on an actuarial finding that the change is supported by the existing funding status of the fund; the actuary, if an individual, must be a Fellow of the Society of Actuaries or a Fellow of the Conference of Actuaries in Public Practice or a Member of the American Academy of Actuaries; the actuary, if an actuarial consulting firm, must be established in the business of providing actuarial consulting services to pension plans and have experienced personnel able to provide the requested services; the findings upon which the properly selected and qualified actuary's approval are based are not subject to judicial review;

> (2) the change must be approved by a majority of all persons then making contributions to the fund as employees of a department to which the change would directly apply, voting by secret ballot at an election held after ten (10) days' notice given by posting at a prominent place in every station or substation of a department to which the change would directly apply and in the city hall;

TEX.REV.CIV.STAT.ANN. art. 6243b, § 10A(b)(1) and (2).

The change also had to be approved by a majority vote of the board. TEX.REV.CIV.STAT.ANN. art. 6243b, § 10A(a). For the 1985 Board to have legally awarded Heinrich 100 percent of her husband's pension, it was required to follow each of these steps. *Heinrich*, 284 S.W.3d at 379. Henrich points to several pieces of evidence to show the 1985 Board complied with these steps. One is a letter sent to the secretary of the pension board and later forwarded to Heinrich from Chief of Police William E. Rodriguez, dated October 16, 1985. In the standard form letter, the following paragraph appears:

6

> Mrs. Heinrich's pension benefits are effective August 30, 1985. Upon the approval of the Pension Board, Mrs. Heinrich will receive 100% of her husband's final pension amount. For August, Mrs. Heinrich will receive $34.88 and $1,046.31 for September and each month thereafter.

Heinrich contends this raises a fact issue that would allow a fair-minded jury to find the 1985 Board followed the required procedures and voted to award her benefits equivalent to 100 percent of her husband's pension. A second letter was sent that same day, identical to the first in all respects save a modification to the referenced paragraph:

> Mrs. Heinrich's pension benefits are effective August 30, 1985. Upon the approval of the Pension Board, Mrs. Heinrich *and her dependent children* will receive 100% of her husband's final pension amount. For August, Mrs. Heinrich will receive $34.88 and $1,046.31 for September and each month thereafter. [Emphasis added].

The Board Members refer to this as the "corrected letter," and urge that this second letter confirms the benefits awarded were always for Heinrich and her son in the total amount of 100 percent of her husband's pension, as would be consistent with the bylaws in place at the time. But the question is whether this letter, viewed in the light most favorable to Heinrich, would allow a reasonable jury to make a finding that the 1985 Board took the steps required to award her 100 percent of her husband's pension in her own right. As noted, to award Heinrich the pension she claims she was awarded, the 1985 Board was required by statute to (1) complete an actuarial study that concluded the change was supported by the existing funding status of the fund, (2) have the change approved by a majority vote of all contributing members, and (3) have a majority of the board vote to approve the changes as well. TEX.REV.CIV.STAT.ANN. art. 6243b, § 10A(b)(1) and (2). Viewing the letter in that light, the document does "no more than create a surmise or suspicion" that the 1985 Board took the extraordinary steps required to give her that higher award, which is in legal effect no evidence at all. *Ford Motor Co.*, 135 S.W.3d at 601.

7

Heinrich also points out that an actuarial study was conducted around the time of her pension award.   Indeed, an actuarial report dated October 7, 1985, was provided to the 1985 Board by The Wyatt Company.   But the actuarial report referenced was conducted after Heinrich was awarded her benefits in August 1985 and the report itself expressly states that the potential changes in survivor benefits "[do] not apply to current benefit recipients," which Heinrich was at the time. As such, this report could not have supported an increase to Henrich's benefits under the statute. *City of Keller*, 168 S.W.3d at 810.   In fact, the study was conducted because the 1985 Board wanted to change the bylaws so that all future qualified surviving spouses received 100 percent of the member's pension instead of the two-thirds mandated at the time.   The 1985 Board voted on November 20, 1985 to approve this change, having already received a majority vote in favor of the change by all contributing members on November 1.   Accordingly, this actuarial study is no evidence that a study was conducted for the purpose of raising Heinrich's benefits.

Henrich also contends a statement in the board minutes referring to "retro pay" was a reference to her benefits being retroactively increased as part of the changes to the bylaws.   This contention is without merit.   The reference made in the minutes of the November 20 board meeting was as follows:

> Chief Rodriguez asked at this time if a letter could be sent from the Board to the Chief's so the retro pay and the increases could be on the December checks.

The resolution by the board on November 20 approving the change to the bylaws increasing survivor benefits made them retroactively effective as of November 1.   The reference to retro pay, in context, was to beneficiaries whose benefit payments became effective after November 1 at the default rate of two-thirds but who were entitled to 100 percent pursuant to the retroactive change in the bylaws.   Heinrich is not mentioned, nor are beneficiaries whose benefits vested prior to

8

November 1. Absent more, this statement in the minutes cannot serve as evidence that would allow a reasonable and fair-minded jury to find that Heinrich's benefits were retroactively increased. *City of Keller*, 168 S.W.3d at 810.

Finally, Heinrich asserts the testimony of a former legal advisor to the 1985 Board, John Batoon, raises a fact issue regarding whether her benefits were increased by the board at that time. Batoon testified that in 1985 at one of its regular meetings the 1985 Board "granted [Heinrich] 100 percent pension benefits." It is this statement Heinrich asserts supports her claim. But Batoon also clarified the pension referenced was for Heinrich "and a son." He also confirmed that under the bylaws active at the time of Charles Heinrich's death, the qualified spouse would receive a two-thirds pension and the child would receive one-third. Finally, he stated that the change made to the bylaws by the November vote could not apply to the pension received by Heinrich because Charles was no longer a member of the Fund when the change was made. In short, Batoon's testimony provided no evidence that the 1985 Board increased Heinrich's benefits in compliance with the statute.

Because Heinrich produced no evidence from which a reasonable jury could conclude she had originally been awarded her husband's full pension in her own right, she could not show the 2002 Board Members acted without legal authority in terminating the portion of her monthly payment attributable to her son's one-third benefit, as she was required to do to pursue her *ultra vires* claim. *Heinrich*, 284 S.W.3d at 372. Thus, the trial court properly granted directed verdict. *Prudential Ins. Co. of America*, 29 S.W.3d at 77. Heinrich's sole issue is overruled.

### Court Costs

In a cross-appeal, the Board Members contend the trial court abused its discretion in

9

refusing to award taxable court costs to them as the prevailing parties at trial. They contend Heinrich did not make a showing of good cause as to why she should be exempted from Texas Rule of Civil Procedure 131, which entitles the successful party in a lawsuit to recover taxable costs.

### *Standard of Review*

A trial court's ruling on costs under Rule 141 of the Texas Rules of Civil Procedure is within its sound discretion. *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001). It abuses its discretion if it acts without reference to guiding principles or rules. *Enbridge Pipelines (E. Texas) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012). If the trial court's decision lies within the zone of reasonable disagreement, we must uphold it. *Diamond Offshore Services Limited v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018).

### *Applicable Law*

Rule 131 of the Texas Rules of Civil Procedure mandates the successful party in a lawsuit recover court costs from the adverse party. TEX.R.CIV.P. 131. But Rule 141 tempers this mandate by authorizing the trial court to apportion the costs in another manner for good cause, provided it states its reasoning on the record. TEX.R.CIV.P. 141. "Good cause" is an elusive concept that varies from case to case but typically has meant that the prevailing party unnecessarily prolonged the proceedings, unreasonably increased costs, or otherwise did something that should be penalized. *Furr's Supermarkets, Inc.*, 53 S.W.3d at 376–77. But good cause cannot, as a matter of law, mean potential emotional harm or inability to pay on the part of the losing party. *Id.*, at 377.

### *Analysis*

In the trial court, the Board Members argued—as they do now—that "good cause" implies some fault on the part of the prevailing party and costs should not be assessed against them absent a showing of fault. The trial court, in response to argument by the Board Members that there was no fault on their part for the costs associated with the case, injected the following:

THE COURT: I take exception to that and let me tell you why. If this were a negligence cause of action, Counsel, the Court, if I can borrow an element of a negligence cause of action, I would state and I believe that the proximate cause of this whole incident was caused by the Board and Chief of Police William Rodriguez when he sent a letter to Mrs. Heinrich and stated, The Board has met and you're entitled to 100 percent of Mr. Heinrich's pension, if I remember the language in the letter.

By using that language, those words, I mean, that precipitated, that proximately caused, in my opinion, if I can use 'proximate cause,' this lawsuit. Had he not used the language '100 percent' and, instead, used the language 'Mrs. Heinrich is entitled to 66 2/3 and the child one-third,' then this whole lawsuit could have been averted.

Two, another reason this whole incident could have been averted is that the Pension Board could have sent two checks to Mrs. Heinrich. They could have sent her a check for 66 2/3 percent and one-third, 33 1/3 percent, to the child, two separate checks, and we wouldn't have had this problem.

Moreover, had there been proper bookkeeping on the part of the Pension Board, then we wouldn't have had this incident. In fact, if I remember the testimony, the Legislature had, through one of our representatives, Joe Pickett, he had to introduce legislation so that, if I remember correctly, an auditor could be hired and they could correct the books to find out who was getting overpaid and who was getting underpaid and let's make the correction. So there was improper bookkeeping on the part of the Pension board.

So, you know, when you use the language, 'There was no fault on the part of my client,' I beg to differ, Counsel. This whole lawsuit could have been avoided . . . .

The Board Members contend that none of the three reasons offered by the trial court are sufficient because "good cause" must be based on some action that occurred during litigation.

11

Because the alleged bad acts cited by the trial court all occurred prior to the commencement of the underlying litigation, they cannot serve as "good cause" under Rule 141. Alternatively, they argue that reliance on the letter was inappropriate because a corrected letter was sent to Heinrich. Neither of these contentions are convincing.

The Board Members assert that the following quote from the *Furr's Supermarkets, Inc.* case supports their contention that the bad acts must have occurred during the litigation:

> Rule 141's good cause exception to the mandate of Rule 131 is designed to account for a prevailing party's questionable conduct that occurs during litigation, permitting the trial judge some discretion to reassess costs so that the cost attendant to that conduct is not visited on an innocent, but losing party.

*Furr's Supermarkets, Inc.*, 53 S.W.3d at 378. The purpose of the rule is, as noted by the Texas Supreme Court, to grant the trial court discretion to shift costs so that the assessed charges attendant to the questionable conduct "is not visited on an innocent, but losing party." *Id*., at 378. The trial court here did precisely that by acknowledging Heinrich's mistaken perception that she was entitled to her husband's full pension was based, at least in part, on the actions of the Board Members. While the Board Members protest that their actions were not blameworthy, we must uphold the trial court's decision if it is within the zone of reasonable disagreement. *Williams*, 542 S.W.3d at 545. The incorrect letter and the failure of the checks to identify dual nature of the payment can reasonably be seen as the cause of the dispute and its prolonged nature. Likewise, absent the improper bookkeeping this error could have been discovered earlier and not caused Heinrich the burden of having her monthly payments further reduced to compensate for overpayments made when her son was no longer a qualified child. As the court in *Furr's* held, "Rule 141 has two requirements—that there be good cause and that it be stated on the record." *Id*., at 376. It further stated "'good cause' is an elusive concept that varies from case to case," but

that it typically meant an unnecessary prolonging of the proceedings, unreasonable increase in costs, or otherwise "something that should be penalized." *Id*., at 376–77. This definition of "good cause" fits with the trial court's stated reasoning. Rule 141 itself places no temporal limitations on the trial court's assessment of good cause and we do not read the *Furr's* court's reference to litigation as limiting the trial court's discretion to adjudge costs for actions that unnecessarily prolonged the litigation or other acts that should be penalized. *Furr's Supermarkets, Inc.*, 53 S.W.3d at 376–77. As to the Board Members' assertion that the corrected letter negated any harm caused by the first, that contention is squarely within the zone of reasonable disagreement, and we will not disturb a trial court's ruling within that zone. *Williams*, 542 S.W.3d at 545. Accordingly, the trial court did not abuse its discretion in finding good cause to assign costs to the party who incurred them. *Avinger Timber, LLC*, 386 S.W.3d at 262.

## CONCLUSION

Having overruled Heinrich's sole issue on appeal and the Board Members' cross-appeal, the decision of the trial court is affirmed.

November 28, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

13