# IN THE SUPREME COURT OF TEXAS

═══════════
No. 14-0797
═══════════

IN RE STEVEN C. PHILLIPS, RELATOR

═══════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════

**Argued November 3, 2015**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

The Tim Cole Act ("the Act")[1] provides compensation for the time a person is wrongfully imprisoned and for child support owed but not paid by the person, plus interest, while imprisoned.[2] The Act states that "[t]he comptroller shall determine . . . the amount of compensation owed".[3] We conclude that the Comptroller's authority to determine the compensation owed is exclusive, and that the Comptroller therefore is not bound by a court's judgment in a child support enforcement proceeding. We also conclude that the Comptroller's statutory duty is ministerial, and that the Comptroller's determinations are in turn subject to review by this Court in this original petition for

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154.

[2] *Id.* § 103.052(a)(2).

[3] *Id.* § 103.051(b).

a writ of mandamus.[4] We grant relief only to direct the Comptroller to correct legal errors in his determination in this case.

## I

On the morning of May 15, 1982, a man in a hooded, gray sweatshirt, carrying a handgun, walked into a figure salon in Garland, Texas, and commanded the women present to disrobe while he abused himself, then drove away in a maroon car. This was one in a string of similar, sometimes bizarre sexual assaults in the Dallas area over a two-day period that police believed were committed by a single person. One of the victims initially identified Sidney Goodyear as her assailant but later picked Steven Phillips out of a lineup instead. Phillips was indicted for 11 offenses relating to the May incidents, as well as for an unrelated sexual assault in February. In each case, a victim identified him as the perpetrator.

In one of the May incidents, the assailant had broken into the victim's home and raped her. Phillips was tried first for burglary, then for aggravated sexual abuse. The victims in all the incidents testified as to his bad reputation. He was convicted in both cases and given a 30-year sentence in each, to be served concurrently. Rather than stand trial on the other nine charges, he pled guilty. He was never told that one victim had first identified Goodyear. Nor was he told that Goodyear had later been charged in Kansas City on a string of similar offenses that occurred just two weeks after the

---

[4] *Id.* § 103.051(e).

Dallas crime spree. And he was not told that police had concluded he was not responsible for the February sexual assault.[5]

In 2001, the Legislature enacted Chapter 64 of the Texas Code of Criminal Procedure, allowing for the first time a convicted person to move for DNA testing of evidence that was unavailable when the person was tried.[6] Phillips immediately moved for testing in his cases, but, despite the availability of biological evidence, prosecutors opposed his motion until 2007, when they finally agreed.[7] The test excluded Phillips as the perpetrator. Goodyear's DNA proved a match to that found at the Dallas crime scene. A further investigation of Goodyear revealed that he had owned a gun and car like those used in the Dallas crimes, had committed a string of almost identical sexual assaults throughout the country for decades, and was wanted by several law enforcement agencies and the FBI.

On Phillips's motion for habeas relief, the trial court concluded that he was actually innocent of the crimes for which he was convicted, and that he would not have pled guilty to the other charges

---

[5] We have taken this account from the trial court's findings in the original habeas proceedings. For another, somewhat different account, *see also* Mike Ware, *Dallas County Conviction Integrity Unit and the Importance of Getting It Right the First Time*, 56 N.Y.L. SCH. L. REV. 1033, 1044–1046 (2012).

[6] Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 2–4 (codified at TEX. CODE CRIM. PROC. arts. 64.01–.05).

[7] *See* Michael Hall, *Why Can't Steven Phillips Get a DNA Test?*, TEX. MONTHLY, Jan. 2006, available at 2006 WLNR 25908563.

but for the prosecutors' *Brady* violations.[8] The trial court granted relief, and the Court of Criminal Appeals concurred.[9] The District Attorney dismissed all charges.

In October 2009, Phillips applied to the Comptroller for wrongful imprisonment compensation under the Tim Cole Act. He and the Comptroller agreed that he was due a lump sum of approximately $2 million for the time he was incarcerated.[10]

Phillips also requested compensation for child support he had failed to pay. A 1978 Arkansas divorce decree ordered him to pay Cheryl Macumber $100 a month in child support beginning in March 1978 but, as confirmed by the Arkansas Child Support Enforcement Office, Phillips had made only two payments of $110 each. Macumber herself wrote to the Comptroller requesting compensation for the unpaid child support. The Comptroller responded that compensation for unpaid child support could be paid only to the state disbursement unit for distribution to the person owed.[11] Arkansas authorities refused to accept payment because there was no open enforcement proceeding pending in Arkansas.

---

[8] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[9] *Ex parte Phillips*, Nos. AP-76010, AP-76011, AP-76012, AP-76013, AP-76014, 2008 WL 4417288, at *1 (Tex. Crim. App. Oct. 1, 2008) (per curiam).

[10] Phillips was incarcerated from June 4, 1982, to October 23, 1996, when he was released on probation. After violating the terms of his mandatory supervision, Phillips was re-incarcerated from May 14, 1997, to December 28, 2007. In all, Phillips spent more than 25 years wrongfully confined. Lump sum compensation at $80,000 per year, *see* TEX. CIV. PRAC. & REM. CODE § 103.052(a)(1), totaled $2,069,166.67. Phillips's entitlement to compensation, and the amount of the lump sum, are not at issue here.

[11] *See* TEX. CIV. PRAC. & REM. CODE § 103.052(c) ("The amount of compensation under Subsection (a)(2) to which a person is entitled [for child support arrearages] shall be paid on the person's behalf in a lump-sum payment to the state disbursement unit, as defined by Section 101.0302, Family Code, for distribution to the obligee under the child support order."); TEX. FAM. CODE § 101.0302 ("'State disbursement unit' means the unit established and operated by the Title IV-D agency under 42 U.S.C. Section 654b that has responsibility for receiving, distributing, maintaining, and furnishing child support payments and records on or after October 1, 1999.").

4

On May 22, 2013, Macumber sued Phillips in Texas to register and enforce the Arkansas divorce decree under the Uniform Interstate Family Support Act ("UIFSA").[12] After Phillips did not answer, Macumber sought a default judgment. At a 21-minute hearing on June 28, Macumber testified by telephone, and her counsel in person, that under Arkansas law she was entitled to $304,861.74, which included 10 percent interest compounded monthly, plus 10 percent for attorney's fees. With no other evidence before it, the trial court rendered judgment ("the Enforcement Judgment") accordingly. The Attorney General filed a post-judgment intervention, but immediately nonsuited. Phillips moved for a new trial but does not appear to have appealed.[13]

Phillips requested that the Comptroller pay child support compensation based on the amount awarded by the Enforcement Judgment. The Comptroller responded that he had the exclusive authority to determine compensation owed under the Act, which, by his calculations was $25,125.69. He explained:

> To calculate the amount of child support arrearages and interest that accrued, the Comptroller first determined that: (1) Mr. Phillips's obligation to pay current child support payments terminated by operation of law upon the date [his child] should have graduated from high school, May of 1994; (2) none of Mr. Phillips's child support payments that became due prior to March 7, 1989 accrued interest, and all of Mr. Phillips's child support payments that became due after March 7, 1989 accrued interest at the statutory rate of ten percent (10%) per annum; (3) the ten percent (10%) interest rate in this case should be calculated as simple interest; and (4) interest on child support arrearages stopped accruing when [his child] turned 23 on January 1, 1999.

---

[12] TEX. FAM. CODE § 159.601.

[13] We are not presented with, and do not consider, any issue concerning whether Phillips has or could seek relief by bill of review. *See* TEX. R. CIV. P. 329b; *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) ("The residual four-year statute of limitations applies to bills of review.").

The Comptroller also explained why Macumber's calculation, on which the Judgment was based, was incorrect:

> (1) it compounds the interest when a simple interest rate is required; (2) it begins interest accrual prior to March 7, 1989, the effective date of Act 383 of Arkansas, 1989 Regular Session, which authorized the accrual of interest on child support arrearages; and (3) it continues to calculate interest beyond [his child's] 23rd birthday on January 1, 1999 in contravention of Ark. Code Ann. § 9-14-236.

Phillips petitioned this Court to direct the Comptroller to pay as wrongful imprisonment compensation that portion of the Enforcement Judgment award relating to the period of his incarceration, which he asserts is $246,123.38. We agreed to hear argument.[14]

## II

We consider first the nature of the Comptroller's authority to determine compensation owed under the Act. We conclude that it is exclusive, ministerial, and subject to review.

## A

The Act provides that a person who satisfies prescribed eligibility requirements[15] is entitled to compensation in an amount equal to:

> (1) $80,000 multiplied by the number of years served in prison, expressed as a fraction to reflect partial years; and

---

[14] 58 Tex. Sup. Ct. J. 1602 (Sept. 4, 2015). We have jurisdiction over the petition. *See* TEX. CIV. PRAC. & REM. CODE § 103.051(e) ("If the comptroller denies a claim after the claimant submits an application under Subsection (d), the claimant may bring an action for mandamus relief."); TEX. GOV'T CODE § 22.002(c) ("Only the supreme court has the authority to issue a writ of mandamus . . . against any of the officers of the executive departments of the government of this state . . . ."); *In re Allen*, 366 S.W.3d 696, 701 (Tex. 2012).

[15] TEX. CIV. PRAC. & REM. CODE § 103.001.

(2) compensation for child support payments owed by the person on whose imprisonment the claim is based that became due and interest on child support arrearages that accrued during the time served in prison but were not paid.[16]

The Act adds:

The comptroller shall determine:

(1) the eligibility of the claimant; and

(2) the amount of compensation owed to an eligible claimant.[17]

Phillips acknowledges the Comptroller's authority to determine the amount of compensation owed a claimant, but argues that in making that determination the Comptroller is bound by a judicial determination of the amount of child support the claimant owes.

Phillips's argument misunderstands the Comptroller's statutory authority and renders it meaningless. The Comptroller's authority is to determine, not child support arrearages as between parents, but "*compensation* for child support . . . arrearages". The arrearage is what one parent owes the other; compensation is what the State (and taxpayers) owe the claimant. Compensation is to be based on arrearages, but the amount is to be determined by the Comptroller, not the court. Were the Comptroller bound in determining compensation owed by a judgment determining child support owed, the court would be determining both.

This case illustrates the importance of the distinction. The enforcement proceeding involved only Macumber's claim against Phillips, not Phillips's claim against the State. When Phillips chose not to answer or appeal, the trial court may have been justified in taking Macumber's factual

---

[16] *Id.* § 103.052(a).

[17] *Id.* § 103.051(b).

allegations about Arkansas law as uncontested[18]—*by Phillips*—and in rendering judgment—*against Phillips*. The State was not a party, and its interest in the amount of wrongful imprisonment compensation due Phillips was not represented. Phillips argues that the Comptroller's refusal to base the amount of compensation due to him on the amount awarded Macumber by the Enforcement Judgment amounts to a collateral attack. But the Comptroller has no interest in attacking an award to Macumber against Phillips, an entirely private matter between the two of them. The Comptroller's interest is solely in the State's statutory responsibility to compensate Phillips. Phillips argues that by not appearing in the enforcement proceeding, the Comptroller waived his right to be heard on the issue of child support arrearages. But again, the Comptroller has no interest in that issue *as between Phillips and Macumber*. The Comptroller's sole interest is in the amount owed by the State, which he is statutorily empowered and obligated to decide apart from the enforcement proceedings.

Were the Comptroller bound by the Enforcement Judgment, the amount of wrongful imprisonment compensation due Phillips would be finally determined, in the absence of an appeal, by the trial judge based on Macumber's assertions. Such a result would be inconsistent with the text and purpose of the Act. We thus conclude that the Comptroller was not bound by the Enforcement Judgment in determining the compensation owed under the Act for child support arrearages.

---

[18]A default judgment must also be supported by the pleadings. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979); TEX. R. CIV. P. 301; *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012) ("[A] non-answering party in a no-answer default judgment is said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts. The defendant's default thus establishes liability, but a trial may still be necessary if the plaintiff's damages are unliquidated.") (citations omitted).

**B**

We have previously characterized the Comptroller's statutory obligation to determine compensation owed as ministerial.[19] An officer's duty is ministerial when the "law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion."[20] A mandamus action is a proper remedy to redress a failure to perform such a duty.[21] Here the Act requires the Comptroller to base compensation on unpaid child support. The determination involves law and arithmetic: in this case, determining and applying Arkansas law, and then making the necessary calculations. An official "has no discretion or authority to misinterpret the law"[22] or the rules of arithmetic.

The Comptroller argues that ascertaining the substance and applicability of Arkansas law governing child support involves "discernment" amounting to discretion. But the required analysis involves no more discretion than in determining Texas law. However uncertain the legal issues may

---

[19] *In re Smith*, 333 S.W.3d 582, 587 (Tex. 2011) ("The current statute directs the Comptroller to determine eligibility and the amount owed according to its terms, and the proceeding here seeks to compel the Comptroller to perform her ministerial duty under the Act.").

[20] *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991) (citing *Depoyster v. Baker*, 34 S.W. 106, 107 (Tex. 1896)).

[21] *Id.* at 793 (noting, in an appeal from a trial court mandamus action, that a "writ of mandamus will issue to compel a public official to perform a ministerial act"). Note, though, that "an appellate court may not deal with disputed areas of fact in an original mandamus proceeding." *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex. 1990) (citing *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978)).

[22] *In re Smith*, 333 S.W.3d at 585.

be, there is only one correct resolution. There is no room for any discretion or discernment. The Comptroller's duty is plainly ministerial.[23]

## C

The Comptroller's authority to determine compensation owed, though exclusive and ministerial, remains subject to review. The Act expressly provides for a review of the Comptroller's decision in "an action for mandamus relief."[24] We have previously reviewed the Comptroller's actions for compliance with controlling law.[25] This case requires us to do so again.

Phillips is correct that the Comptroller's duty under the Act is ministerial, but this ministerial duty is dictated by the controlling state law on arrearages and interest, not a trial court judgment. The Comptroller's ministerial duty under the Act is to conduct an independent and accurate calculation of Phillips's entitlement. We therefore reject Phillips's request for mandamus relief in the amount of the trial court's Enforcement Judgment.

## III

We now turn to the issue of whether the Comptroller correctly calculated the amount of compensation owed to Phillips under the Act based on unpaid child support and interest while he

---

[23] This case involves only a determination of the applicable law and an arithmetical calculation. We acknowledge that the Comptroller's determination of the amount of compensation for child support payments owed by a claimant could involve factually disputed matters not present here, such as the amount of payments actually made by the claimant during the relevant time period. We understand from the Comptroller that his decision is made on a written record, and we are uncertain what process he would use to resolve any such factual disputes if presented. We do not intend by today's opinion to address what that process should be or how we would review it. Nor do we intend to express any opinion on the effect of a trial court's findings in an enforcement proceeding to which the Comptroller was a party.

[24] TEX. CIV. PRAC. & REM. CODE § 103.051(e).

[25] *See, e.g.*, *In re Smith*, 333 S.W.3d at 590.

10

was imprisoned. The Comptroller and Phillips agree that, generally, Arkansas law controls[26] and that Phillips's $100/month support obligation ended in May 1994 when his child graduated from high school.[27] They disagree on four issues.

*First*: What rate of interest applies? Under Section 9-12-309 of the Arkansas Code, "[a]ll child support that becomes due and remains unpaid shall accrue interest at the rate of ten percent (10%) per annum."[28] But the statute's effective date was January 1, 1988.[29] The Comptroller argues that before that date, the interest rate was set by a now-repealed anti-usury provision of the Arkansas Constitution which provided that "when no rate of interest is agreed upon, the rate shall be six per centum per annum."[30] The Comptroller contends that since neither the 1978 divorce decree nor Arkansas law designated an interest rate for child support arrears, the default six percent rate should apply from June 1982, when Phillips was first incarcerated, to January 1988. But Section 29-124 of the Arkansas Code, which was effective in 1982, provides that judgments bear interest at 10 percent

---

[26] TEX. FAM. CODE § 159.604(a).

[27] ARK. CODE § 9-14-237(a)(1).

[28] *Id.* § 9-12-309.

[29] Acts of 1987, Act 813, § 1; Acts of 1987, Act 267, § 1.

[30] ARK. CONST. art. XIX, § 13 (repealed in 2011).

11

per annum.[31] The Arkansas Supreme Court has applied this statute to child support arrearages.[32] The application of a post-judgment interest rate to child support arrearages is consistent with Arkansas's robust protection and enforcement of child support orders.[33] We therefore conclude that the interest on all Phillips's arrearages is 10 percent.

*Second*: Is interest simple or compound? Although Section 9-12-309 requires interest of 10 percent "per annum", Phillips argues that the interest compounds, accruing on both the principal and the unpaid interest from previous months. The Arkansas Supreme Court has calculated child support arrears using simple interest.[34] Simple interest for child support arrears is consistent with the Arkansas Supreme Court's position that "payment of interest upon interest is not generally favored by the courts."[35] Additionally, no Arkansas court has *ever* applied compound interest when calculating child support arrears. If the Arkansas Supreme Court disfavors compound interest and

---

[31] ARK. CODE § 29-124 (recodified in 1985 as section 16-65-114, Acts of 1985, Act 782, § 1). *See also Bank of Bearden v. Simpson*, 808 S.W.2d 341, 344 (Ark. 1991); *Hopper v. Denham*, 661 S.W.2d 379, 383 (Ark. 1983); *Halford v. S. Capital Corp.*, 650 S.W.2d 580, 582 (Ark. 1983); *Advance Constr. Co. v. Dunn*, 563 S.W.2d 888, 890 (Ark. 1978). The recodification still provides that "interest on a judgment entered by a court shall bear interest . . . at ten percent (10%) per annum." ARK. CODE § 16-65-114(a)(1).

[32] *Sharum v. Dodson*, 568 S.W.2d 503, 506 (Ark. 1978) ("There is no question about appellant's entitlement to interest at the rate of 10% per annum." (citing ARK. CODE § 29-124)).

[33] *Id.* at 505 ("Entitlement to payment of child support installments vested in appellant as they accrued, and she was entitled to judgment as a matter of right, when they were not paid".); *see also Office of Child Support Enf't v. King*, 100 S.W.3d 95, 99 (Ark. Ct. App. 2003) ("Once a child-support payment falls due, it becomes vested and a debt due the payee.").

[34] *See Jones v. Billingsley*, 211 S.W.3d 508, 510 (Ark. 2005) (applying simple interest calculations to affirm $4,867.20 in interest on missed monthly support payments of $112.70 over eight years).

[35] *Hartford Sch. Dist. No. 94 v. Commercial Nat. Bank*, 188 S.W.2d 638, 640 (Ark. 1945) (resolving interest rate for school bonds).

has previously applied simple interest to calculate child support arrears, then we can safely conclude that simple interest is the appropriate rate for child support arrears under Arkansas law.[36]

*Third*: When does interest cease to accrue? Arkansas law mandates that an obligor make child support payments until the child reaches 18 years old or graduates from high school, whichever is later.[37] The Comptroller and Phillips agree that principal child support payments terminated in May 1994. Under Arkansas law, interest accrues at 10 percent as long as the child support obligation "remains unpaid".[38] But the Comptroller argues that interest stopped accruing five years after the child turned 18 (in January 1999) because Section 9-14-236(c) of the Arkansas Code states that "[a]ny action [for child support] . . . may be brought at any time up to and including five (5) years beyond the date the child for whose benefit the initial support order was entered reaches eighteen (18) years of age."[39] According to the Comptroller, since the statute of limitations for child support enforcement actions in Arkansas is five years, interest must also stop accruing after five years. But Macumber need not have sued in Arkansas to enforce the child support obligation, and she in fact sued in Texas. UIFSA, applicable in Texas, provides that when an out-of-state support order is registered in Texas, "the statute of limitation of this state or of the issuing state, whichever is longer,

---

[36] This is in line with Texas law which also requires simple interest for child support arrears. *See* TEX. FAM. CODE § 157.265(a) ("Interest accrues on the portion of delinquent child support that is greater than the amount of the monthly periodic support obligation at the rate of six percent simple interest per year from the date the support is delinquent until the date the support is paid or the arrearages are confirmed and reduced to money judgment.").

[37] ARK. CODE § 9-14-237(a)(1).

[38] *Id.* § 9-14-233(a).

[39] *Id.* § 9-14-236(c).

applies."[40] As of 2009, Texas did not have a statute of limitations for bringing an action to collect child support arrears.[41] Thus, no statute of limitations applies to the accrual of interest on Phillips's obligation. The Comptroller erred in terminating all interest accrual in 1999.

*Fourth*: Does interest accrue on Phillips's pre-incarceration arrearage? Phillips was already $5,100 in arrears in child support payments when he was incarcerated. The Comptroller argues that Phillips's compensation should not include interest on that amount. As noted above, the Act provides for "compensation for . . . interest on child support arrearages *that accrued* during the time served in prison but were not paid."[42] The issue is whether the phrase, "that accrued", modifies (a) "interest", (b) "arrearages", or (c) both. The consequences of each view are as follows:

| Interest accrues: | (a) | (b) | (c) |
|---|---|---|---|
| On pre-incarceration arrearage | yes | no | no |
| Post-incarceration | no | yes | no |

The text itself does not offer a clear answer. The premise for awarding compensation for unpaid child support and interest is that wrongful imprisonment deprives a person of any ability to pay. The person's ability to pay child support, arrearages, and interest pre- and post-incarceration is not the Act's concern. Reading "that accrued" to modify only "interest" best comports with the Act's purpose. The Comptroller erred in refusing compensation for interest that accrued during Phillips's

---

[40] TEX. FAM. CODE § 159.604(b).

[41] TEX. CIV. PRAC. & REM. CODE § 34.001(c). *See also Holmes v. Williams*, 355 S.W.3d 215, 219–220 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

[42] TEX. CIV. PRAC. & REM. CODE § 103.052(a)(2) (emphasis added).

incarceration on pre-incarceration arrearages, but did not err in excluding interest that accrued post-incarceration.

*     *     *     *     *

We direct the Comptroller to recalculate the compensation owed to Phillips under Section 103.052(a)(2) of the Act in accordance with this opinion. Phillips's petition for mandamus is conditionally granted to this extent only and otherwise denied. We are confident the Comptroller will comply. Our writ will issue only if he does not.

 

Nathan L. Hecht
Chief Justice

Opinion delivered: May 13, 2016