**Reverse and Render in Part, Affirm in Part, and Remand Memorandum Opinion filed March 10, 2026**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-25-00013-CV

---

**STATE OF TEXAS, THE TEXAS FACILITIES COMMISSION, THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, MIKE NOVAK, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TFC, AND ROLLAND NILES, IN HIS OFFICIAL CAPACITY AS DEPUTY EXECUTIVE COMMISSIONER FOR THE SYSTEM SUPPORT SERVICES DIVISION OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellants**

**V.**

**BROADMOOR AUSTIN ASSOCIATES, A TEXAS JOINT VENTURE, Appellee**

---

**On Appeal from the 455th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-23-007899**

---

## MEMORANDUM OPINION

The State is not an *agency* of the State; it *is* the State. Appellant the State of Texas, acting through appellant Texas Facilities Commission ("TFC"), sought to

terminate its lease for office space with appellee Broadmoor Austin Associates, a Texas Joint Venture, ("Broadmoor"). The office space was being occupied by appellant Health and Human Services Commission ("HHSC"). Broadmoor sued TFC, HHSC, the State, Mike Novak, in his official capacity as Executive Director of TFC, Rolland Niles, in his official capacity as Deputy Executive Commissioner for the System Support Services division of the HHSC (collectively, "Appellants"), and others contesting the termination of the lease. Appellants and others filed a plea to the jurisdiction, which the trial court granted in part and denied in part. The denial related to all of Broadmoor's claims against Appellants. Appellants appealed to this Court. Because we conclude that all claims against TFC, HHSC, the State, and Niles are barred by sovereign immunity but that there is a fact question as to whether a claim against Novak is barred by immunity, we reverse in part and affirm in part the trial court's order.

## BACKGROUND

The State of Texas, operating through its representative TFC, entered into a 10-year lease agreement with private landlord Broadmoor for office space to be occupied by HHSC starting August 1, 2015. The end date of the lease was later extended to October 31, 2026. The lease agreement stipulates the lease "is made contingent upon the continuation of the availability of money appropriated by the legislature to pay for the lease." In the event "the Legislature or the Executive Branch of the State of Texas cease to fund the lease," TFC, "upon written notice to the Lessor, either may terminate [the] lease, or sublet in whole or in part to a private third party" if it cannot find another state agency to at least partially fill the office space. The lease also states that if the State "fails to pay rentals" and fails to timely cure, Broadmoor "will have the remedies now or hereafter provided by law for recovery of rent, repossession of premises and damages occasioned by Lessee's

2

default."

In 2022, HHSC submitted its Legislative Appropriations Request for the 2024–2025 biennium, requesting $105,369,343 and $105,245,466 to fund all of its rental payments for fiscal years 2024 and 2025 respectively. HHSC also made an exceptional item request for an additional $29,601,497 and $41,826,149 for fiscal years 2024 and 2025 respectively to pay for expected increase in lease costs. The Legislature in the State's General Appropriations Act (the "Act") decided to appropriate $118,826,243 for fiscal year 2024 and $119,751,160 for fiscal year 2025, explaining that $12,275,361 had been appropriated for cost increases for state leases. The Act was signed into law on June 18, 2023.

On May 31, 2023, HHSC sent a request to TFC asking it to terminate the lease "due to the non-availability of money, either appropriated by the legislature or funded by grants, to pay for the leased premises . . . ." Pursuant to this request, TFC Executive Director Novak the next day sent a notice of termination to Broadmoor stating the lease was being terminated due to lack of funds and that TFC could not find another state agency to occupy the space. The notice further informed Broadmoor that HHSC "has directed that rent will not be certified for the biennium beginning September 1, 2023 . . . ." Days later, TFC sent a letter to HHSC, as required by law, requesting it to certify available funding to pay for all its leases in the 2024–2025 biennium. HHSC Deputy Executive Commissioner Niles responded to the letter certifying the availability of funds—$93,767,377.36 annually—for all except five leases, one of which was the Broadmoor lease.

Broadmoor sued in Travis County. In its live petition, Broadmoor brings claims against the State, TFC, and HHSC alleging they breached the lease agreement by sending a false and improper lease termination notice and failing to pay rent due under the lease. Broadmoor also brings ultra vires claims against Niles, Novak,

3

Cecile Erwin Young, in her official capacity as Executive Commissioner of HHSC, and Glenn Hegar, in his official capacity as Comptroller of Public Accounts. Regarding its claims against Niles and Novak, Broadmoor alleges Niles acted ultra vires when he failed to certify that HHSC did in fact have funds available to fund the lease and that Novak acted ultra vires when he sent the termination notice to Broadmoor when such funds were available. Lastly, Broadmoor seeks declaratory relief against all defendants that "the 88th Texas Legislature did in fact appropriate funds to pay rent to Broadmoor in satisfaction of the State Lessee's obligations under the Broadmoor Lease for the 2024 and 2025 fiscal years." Defendants filed a plea to the jurisdiction, which they amended, arguing that sovereign immunity barred Broadmoor's claims. The trial court granted in part and denied in part defendants' plea. It granted the plea as to the claims against Young and Hegar, dismissing them from the case, but denied the plea as to all claims relating to Appellants. Appellants then appealed to this Court.

## STANDARD OF REVIEW

Sovereign immunity implicates a trial court's jurisdiction and is properly raised in a plea to the jurisdiction. *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 86 (Tex. 2023). A plea questioning the trial court's jurisdiction raises a question of law that is reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27. The plea must be granted if the plaintiff's pleadings

4

affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

## ANALYSIS

Appellants challenge the trial court's order denying their plea, arguing that (1) Broadmoor's breach of lease claim against the State of Texas, TFC, and HHSC is barred by sovereign immunity; (2) Broadmoor's ultra vires claims against Niles and Novak are barred by immunity; and (3) Broadmoor's request for declaratory relief that the Texas Legislature appropriated sufficient funds for Appellants to pay rent to Broadmoor is barred by immunity.

## I. Broadmoor's Breach of Lease Claim is Barred by Sovereign Immunity

In their first issue, Appellants argue that Broadmoor's breach of lease claim against the State, TFC, and HHSC (collectively, "State Entities") is barred by immunity and that Chapter 114 of the Texas Civil Practice and Remedies Code's immunity waiver provision does not apply. Appellants reason that this provision only applies to state agencies, and the State—the only entity that is a party to the lease—is not a state agency as defined under Chapter 114. Appellants also argue that Chapter 114's waiver, which covers contracts for construction, architectural, and engineering services, does not apply to lease agreements. Appellants further argue that Broadmoor points to no provision of the lease that was violated.

Broadmoor responds that the State Entities are all state agencies that entered into the lease, the lease is also a contract for construction services, and that Broadmoor alleged the State Entities breached the lease provision requiring rental payments. We hold that Chapter 114's immunity waiver does not apply to the State Entities because the State is the only entity that is a party to the lease and the State

is not a state agency as defined by Chapter 114. As TFC and HHSC are not parties to the lease, Chapter 114 does not apply to them.

Chapter 114's waiver provision states:

A state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter.

Tex. Civ. Prac. & Rem. Code § 114.003. A "state agency" under Chapter 114 is defined as "an agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state . . . ." *Id.* § 114.001(3). Narrowing the scope of this waiver, Chapter 114 only applies "to a claim for breach of a written contract for engineering, architectural, or construction services or for materials related to engineering, architectural, or construction services brought by a party to the written contract . . . ." *Id.* § 114.002.

Broadmoor contends that the State Entities are "state agencies" as defined by Chapter 114 and that they all entered the lease with Broadmoor. Section 2167.055 of the Texas Government Code mandates that the State be the lessee in all contracts for lease space: "In a contract by the commission for the lease of space under this chapter, the state, acting through the commission, is the lessee."[1] Tex. Gov't Code § 2167.055(a). The lease agreement states "[t]his Agreement is made and entered into . . . by and between LESSOR, **BROADMOOR** . . . and LESSEE, STATE OF TEXAS, acting by and through the Texas Facilities Commission (TFC)." The terms of the lease and Section 2167.055 are clear that it is the State

_____

[1] The "commission" refers to TFC. Tex. Gov't Code § 2167.0011 ("In this chapter, 'commission' means the Texas Facilities Commission.").

which entered into the lease and that TFC is acting on the State's behalf as its representative. Without even reaching the issue of whether the lease is for construction services, Chapter 114 does not apply to TFC and HHSC because neither "enter[ed] into a contract" with Broadmoor. Tex. Civ. Prac. & Rem. Code § 114.003.

That leaves the remaining question of whether the State is a state agency as defined by Chapter 114. It is not. The Texas Supreme Court has distinguished the State from its agencies. *See State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303–04 (Tex. 2022) (holding that a suit filed "on behalf of *the state*" is not filed "on behalf of a governmental subdivision or agency"); *see also Christ*, 664 S.W.3d at 86 ("Generally, the State of Texas *and* its agencies retain sovereign immunity from suit unless the Legislature clearly and unambiguously waives it.") (emphasis added); *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 740–41 (Tex. 2020) (Boyd, J., concurring) ("[S]tate agencies, political subdivisions, and arm-of-the-state entities are *not themselves* the sovereign State of Texas . . . .") (emphasis added); *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 301 (Tex. 2019) ("Sovereign immunity protects the State of Texas *and* its agencies and subdivisions from suit and liability.") (emphasis added). That is because "[t]here is a distinction between the State of Texas when considered as a sovereign and when considered as a government." *Harris v. O'Connor*, 185 S.W.2d 993, 998 (Tex. App.—El Paso 1944, writ ref'd w.o.m.). The State "is inviolably sovereign" and "[s]uch sovereignty is inherent in its statehood." *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016). The source of this sovereignty "resides only in the people of Texas" and not in "[t]he sum total of the powers of the legislative, executive and judicial officers of the State exercised under the Constitution . . . ." *Harris*, 185 S.W.2d at 998; *see also* Tex. Const. Preamble ("Humbly invoking the blessings of Almighty God, the people of the State of Texas, do ordain and establish this Constitution."); Tex. Const. art. I, § 2

("All political power is inherent in the people . . . .").

For these reasons, the State is not a state agency under Chapter 114—an "entity that is in any branch of state government"—because it is the sovereign itself. Tex. Civ. Prac. & Rem. Code § 114.001(3). As such, the Chapter 114 immunity waiver provision does not apply to it. Broadmoor's breach of lease claim against the State is thus barred by sovereign immunity.

Broadmoor raises three objections. First, Broadmoor objects that Chapter 114's immunity waiver applies to TFC because its applicability is not contingent on the contracting status of the party sued, meaning one does not have to be a party to a contract to be sued. Broadmoor argues that it is enough for TFC to be sued for a breach of lease claim because it entered into the lease as Broadmoor's agent. The Chapter 114 waiver provides that a state agency that enters into a contract "waives sovereign immunity to suit for the purpose of *adjudicating a claim* for breach of an express provision of the contract, subject to the terms and conditions of this chapter." *Id.* § 114.003 (emphasis added). Broadmoor contends that the waiver is for "adjudicating a claim" for "breach of an express provision of the contract" without respect to whom the claim is made against or even their liability status.

This reading is not supported by the text and context of the waiver provision. The waiver applies to claims for "breach of an express provision of the contract," which entails that the person sued breached the contract. As Broadmoor acknowledges, "an agent who contracts for a disclosed principal is generally not liable on the contract." *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 45 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *See* Restatement (Third) Of Agency § 6.01 (Am. L. Inst. 2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) *the agent is not a party to the*

*contract unless the agent and third party agree otherwise.*") (emphasis added). Indeed, Broadmoor does not contest that TFC acted within its legal authority as the State's agent in entering the lease and does not allege any exception that would make TFC personally liable applies. *See, e.g.*, *Burch v. Hancock*, 56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.) ("In order for an agent to avoid personal liability on a contract, he has the duty to disclose not only that he is acting in a representative capacity but also the identity of his principal.").

Broadmoor's argument that TFC can be sued as an agent regardless of its liability status conflicts with the common-law principles on the agent-principal relationship. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 385 (Tex. 2000) (acknowledging that the agent-principal relationship is one of common law). Common-law principles "may be abrogated by statute, but under Texas law, statutes purporting to abrogate common-law principles must do so either expressly or by necessary implication." *Taylor v. Tolbert*, 644 S.W.3d 637, 649 (Tex. 2022) (footnote omitted). Such abrogation "is disfavored" and "a clear repugnance between the common law and a statutory cause of action is required for courts to find that the Legislature abrogated a common law right." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015). The Chapter 114 waiver provision neither expressly abrogates the principle that an agent is not liable for a principal's contract nor does it do so by necessary implication—waiver is still effective against principals even if it is not against agents.[2] TFC therefore cannot be sued for entering the lease in its capacity as the State's agent.

In its second objection, Broadmoor argues that by law the State encompasses

---

[2] The fact that Broadmoor cannot sue the principal in this case, the State, also does not abrogate the common-law principal-agent relationship by necessary implication because there are other "engineering, architectural, [and] construction services" contracts where the State is not a party that the Chapter 114 waiver would still apply to. Tex. Civ. Prac. & Rem. Code § 114.002.

both TFC and HHSC. In support, Broadmoor cites the Texas Tort Claims Act definition of "governmental unit", which includes "all the several agencies of government that collectively constitute the government of this state," Tex. Civ. Prac. & Rem. Code § 101.001(3)(A), and *Monsanto Company v. Cornerstones Municipal Utility District*, which interprets the meaning of "state" in a statute to mean an entity "having statewide jurisdiction rather than an entity having local or limited jurisdiction." 865 S.W.2d 937, 939–40 (Tex. 1993). Broadmoor also argues that the text of Section 2167.055 itself evidences that TFC and HHSC are parties to the lease. This objection conflates state agencies with the State. As discussed above, the State as sovereign is distinct from its state agencies. *See Christ*, 664 S.W.3d at 86; *Nettles*, 606 S.W.3d at 740–41 (Boyd, J., concurring); *Wasson*, 489 S.W.3d at 429; *Harris*, 185 S.W.2d at 998. The authorities Broadmoor cites to do not support its position when examined in full context. The full text of the Tort Claims Act definition of "governmental unit" states "*this state and* all the several agencies of government that collectively constitute the government of this state . . . ." Tex. Civ. Prac. & Rem. Code § 101.001(3)(A) (emphasis added). The emphasized language indicates a distinction between the State and its agencies.

Regarding *Monsanto*, it is true that the Court understood "state" in a statute to mean an entity having statewide jurisdiction and contemplated this to include state agencies. *Monsanto*, 865 S.W.2d at 939–40. But this understanding was made in the context of contrasting state agencies having statewide jurisdiction with local entities having limited or local jurisdiction. *Id.* ("The ordinary meaning of 'state,' as it used by the Texas courts, envisions an entity having statewide jurisdiction rather than an entity having local or limited jurisdiction."). The dispute in *Monsanto* concerned the interpretation of a statute articulating that "[a] right of action of this state, a county, an incorporated city or town, or a school district is not barred by any of the following

10

sections . . . ." *Id.* at 938 n.1 (quoting Act of February 27, 1989, 71st Leg., R.S., ch.2, § 4.02, sec. 16.061, 1989 Tex. Gen. Laws 123, 125 (amended 1993) (current version at Tex. Civ. Prac. & Rem. Code § 16.061)). The parties contested whether a municipal utility district could bring a lawsuit as the "state." *Id.* at 938–39. The Court held that it could not because municipal utility districts, not having statewide jurisdiction, are not the State. *Id.* at 940–41. Unlike the statute in *Monsanto*, Section 2167.055 does not involve a contrast between statewide entities and local entities but between the State and state agencies. The text of Section 2167.055 draws a distinction between the State and a state agency, making clear that TFC was authorized to enter the lease not in its own right but as the State's representative.

Broadmoor contests that Section 2167.055 draws such a distinction. For TFC, Broadmoor argues that the State having to act "through" the TFC to be a lessee and that the TFC being obligated to "accept the [lease] space" upon "the execution of the lease contract" indicates TFC is a party to the lease. Tex. Gov't Code § 2167.055(a), (f). As for HHSC, Broadmoor asserts provisions in the Government Code showing the occupying agency's involvement in the process, such as Section 2167.055's language providing that "[a] lease contract is contingent on the availability of money appropriated by the legislature to pay for the lease," makes HHSC a party.[3] *Id.* § 2167.055(e); *see also id.* §§ 2167.002(a), 2167.053(c)–(e), 2167.101. Neither of these interpretations is supported by the text.

To begin, Section 2167.055 does not describe TFC entering into a lease in its own right but as an agent of the State. This is clear from the full text of Section 2167.055(a): "[i]n a contract by the commission for the lease of space under this chapter, *the state*, acting through the commission, *is the lessee*." (emphasis added).

---

[3] The parties do not dispute that the money available for the lease comes from HHSC, the occupying agency. Tex. Gov't Code § 2167.002(a).

"We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). If the Legislature wanted to say TFC is the lessee for lease contracts, it could have taken out any reference to the state being the lessee and not used agent-oriented language such as "acting through the commission." The fact that it did not indicates the Legislature did not intend for TFC to be the lessee. Accordingly, Section 2167.055(f)'s language that TFC is obligated to accept lease space upon a lease's execution should be understood as binding TFC to accept the space independent of the lease terms. As TFC itself is not a party to the lease, such language is necessary to ensure that it accepts the lease space.

On HHSC, it is true that the occupying agency has significant involvement in the process to secure a lease, from being the source of funding to—in competitive bidding scenarios—having the power to require the governor to decide the winning bidder if it and the TFC cannot agree. Tex. Gov't Code §§ 2167.002(a), 2167.053(c)–(e), 2167.055(e). But having involvement in the process does not make an occupying agency a *party* to the lease. Section 2167.055(a) mandates that the State is the lessee. Even if we assume Section 2167.055 also made TFC a lessee, nowhere does it say HHSC as the occupying agency is also a lessee.

In its third objection, Broadmoor contends that the term "State" as used in the lease captures TFC and HHSC. Broadmoor argues the lease in various places refers to the lessee as a state agency. It points to language stating the lessee is "*an agency* of the State of Texas" and other language such as the lessee being able to terminate the lease "without liability to the State of Texas . . . ." (emphasis added). Broadmoor concludes that this language distinguishes the State of Texas from the "lessee" and so evidences that the lease contemplates the term "State" to encompass more entities than the State of Texas—here HHSC and TFC.

12

None of the language Broadmoor points to in the lease refers to either HHSC or TFC as the "lessee." Regardless of how the lessee may have otherwise been described, the section naming the parties is unambiguous: "This Agreement is made and entered into . . . by and between LESSOR, **BROADMOOR** . . . and LESSEE, STATE OF TEXAS, acting by and through the Texas Facilities Commission (TFC)." This language shows TFC is an agent of the State. On the same page, the lease lists HHSC as an occupying agency, not as a party. Broadmoor asks us to read into the above plain language that TFC and HHSC are also "lessees." We decline to do so. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) (stating contract language should be interpreted "according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise" (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996))). Such an interpretation of the lease would also be in violation of Section 2167.055, which does not authorize TFC and HHSC to enter leases in their own right. *See* Tex. Gov't Code § 2167.055(a).

We sustain Appellants' first issue.[4]

## II. Broadmoor's Ultra Vires Claims Against Niles and Novak

### A. Broadmoor Fails to Plead an Ultra Vires Claim Against Niles

In their third issue, Appellants argue that Broadmoor has not sufficiently pled that Deputy Executive Commissioner Rolland Niles of HHSC acted ultra vires by allegedly failing to certify to TFC that HHSC had funds available to pay for the lease rentals. Appellants contend that Niles had discretion to determine whether funds were available for the lease and that Broadmoor's ultra vires claim is barred for

---

[4] As TFC and HHSC are not parties to the lease and the State is not subject to the Chapter 114 waiver, we do not reach Broadmoor's arguments on whether the lease is the type of contract subject to Chapter 114 and whether the State Entities breached any of the lease provisions.

seeking retrospective relief. Broadmoor responds that Niles did not have discretion in determining the availability of funds, as such a determination is ministerial. Broadmoor also responds that Niles never certified that funds were unavailable. Broadmoor further responds that the relief it seeks is prospective and not retrospective. We agree with Appellants that Niles had discretion to determine the availability of funds.

HHSC, as a state agency occupying office space under the lease, was required under Section 2167.101 of the Texas Government Code to "certify to the commission, at least 60 days before the beginning of each fiscal biennium during the lease term, that money is *available to pay* for the lease until the end of the next fiscal biennium."[5] *Id.* § 2167.101 (emphasis added). The parties do not dispute Niles certified the availability of funds for all but five leases, one of which was the Broadmoor lease. The parties do dispute whether the certification that there is money "available to pay" is a matter of discretion or is ministerial—in this instance whether Niles' decision as to the availability of money for the Broadmoor lease was discretionary or ministerial.

To succeed on an ultra vires claim, a party must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of Hous. v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "'Ministerial acts' are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Id.* (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578,

---

[5] Contrary to what Broadmoor contends, there is no requirement in Section 2167.101—and Broadmoor points to no other provision—requiring Niles to certify the *unavailability* of funds for a lease.

587 (Tex. 2015)). "Conversely, 'discretionary acts' are those that 'require the exercise of judgment and personal deliberation.'" *Id.*

Whether there is money "available to pay" for the lease is a matter of discretion and is not ministerial. "Available" is undefined and the plain meaning of "available" that Broadmoor cites—"capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained"—is broad. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)). Section 2167.101 does not prescribe "with such precision and certainty as to leave nothing to the exercise of discretion or judgment" what amounts to there being available funds to pay for the lease. *City of Hous.,* 549 S.W.3d at 576 (quoting *Emmett*, 459 S.W.3d at 587). It provides no criteria for Niles to use in determining what makes funds available to pay for lease rentals. This lack of "precision and certainty" renders this determination a matter of discretion.

Broadmoor objects that there is no discretion here because the Legislature appropriated funds to HHSC to pay rent for its leases. Whether funds are available is merely a question of whether all those appropriated funds will be expended. Broadmoor asserts this determination is a matter of math and that "[a]n official 'has no discretion or authority to misinterpret the law' or the rules of arithmetic." *In re Phillips*, 496 S.W.3d 769, 775 (Tex. 2016) (orig. proceeding) (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding)). Broadmoor contends that the availability of funds can be determined by subtracting the amount of funds Niles certified that HHSC had available to pay for all lease rental payments from the total the Legislature appropriated for those payments. The differential is the available funds.

Broadmoor then applies this formula, noting that the Legislature appropriated approximately $118 million and $119 million for fiscal years 2024 and 2025

15

respectively and that Niles certified to TFC that HHSC had $93 million in funds to pay for lease rentals for each of those fiscal years. Because "$118+ million > $93 million", Broadmoor concludes there were available funds. But this standard for determining availability of funds is nowhere to be found in the text of Section 2167.101 or elsewhere in the statutory schema. It is also not found in the General Appropriations Act itself, which contains an appropriation to HHSC for "Rent – Building" but provides no further instructions on how such funds must be used, aside from requiring that HHSC "coordinate with the Texas Facilities Commission to identify ways to reduce costs for state leases, including, but not limited to lowering costs associated with Consumer Price Index escalation." *See* Act of May 27, 2023, 88th Leg., R.S., ch. 1170, § 1, 2023 Tex. Gen. Laws 3573, 3731, 3788. This appropriation does not include a line-by-line appropriation for each lease on which HHSC occupies space, only detailing the total rent appropriated for the 2024 and 2025 fiscal years.

Broadmoor presents its formula as the only way Niles could determine the availability of funds, but this is not so at least for the lease at issue. As Appellants note, there are considerations that may complicate predicting how much funding will be spent on rental payments for this lease. For instance, the lease contains a Consumer Price Index (CPI) escalation clause, which states "[o]n each anniversary date of the lease commencement, the total monthly rent of the lease shall be adjusted by changes in the Consumer Price Index (CPI) reflecting percentage increases." Appellants allege, and Broadmoor does not dispute, that other HHSC leases also contained CPI escalation clauses. Appellants assert that Niles' $93 million certification was an estimate and that he could not know the true availability of funds due to how the CPI escalation clauses, along with other "lease support costs" and the "future need for newer facility leases," might change rental payments for the

biennium.[6] Appellants maintain that, given that a certification commits the amount of funds available for the future, Niles certified less than was appropriated as a matter of prudence "to leave room for contingencies when predicting and committing to future funds." We do not weigh in on whether Appellants' assertions here truly reflect Niles' reasoning but they demonstrate that Broadmoor's formula is not the only way to calculate the availability of funds for this lease. Adopting Broadmoor's understanding would amount to requiring a state agency to always certify that it will use the full amount appropriated for rent or else risk being sued by a landlord the agency terminated a lease with.

That there are multiple ways a state agency can determine the availability of funds stands in contrast with *Phillips*, which Broadmoor cites to support its contention that a state official has no discretion to misinterpret "the rules of arithmetic." 496 S.W.3d at 775. In *Phillips*, at issue was a law providing that a wrongly imprisoned person was entitled to compensation in amount equal to "compensation for child support payments owed by the person . . . that became due and interest on child support arrearages that accrued during the time served in prison but were not paid." *Id.* at 770, 773 (quoting Tex. Civ. Prac. & Rem. Code § 103.052(a)(2)). The law stated the Texas Comptroller determined "the amount of compensation owed to an eligible claimant." *Id.* at 773 (quoting Tex. Civ. Prac. & Rem. Code § 103.051(b)). The parties disputed whether this law imposed a ministerial duty on the Comptroller to determine the amount of compensation owed. *Id.* at 775. The Court held that it did, stating that "the Act requires the Comptroller to base compensation on unpaid child support. The determination involves law and arithmetic: in this case, determining and applying Arkansas law, and then making

---

[6] Indeed, Broadmoor acknowledges that HHSC spent more funds on rent than it had certified to TFC.

17

the necessary calculations." *Id.* at 774–75.

The Court's holding rests on the fact that the law stipulates unpaid child support forms the basis of the calculation for what constitutes "the amount of compensation owed." This is not so here. Unlike in *Phillips*, Section 2167.101 does not "base" the "availability of funds" to pay for rent on any metric. Section 2167.101 and the surrounding statutory schema provide no formula to calculate what constitutes "availability of funds." This lack of a stipulated metric leads to the possibility of an official having more than one way to calculate the "availability" of funds, making such a calculation a matter of discretion rather than a ministerial duty.

Accordingly, Broadmoor fails to sufficiently allege an ultra vires claim against Niles.[7]

## B. Broadmoor Sufficiently Alleges an Ultra Vires Claim Against Novak

Appellants in their third issue also argue that Broadmoor has not sufficiently pled that Executive Director Mike Novak of TFC acted ultra vires when he sent Broadmoor the lease termination notice. Appellants contend that Novak was acting within his discretion to send the termination notice based on Niles' determination that funds were not available to fund the lease. Appellants also argue that Broadmoor's ultra vires claim is barred for seeking impermissible retrospective relief. Broadmoor responds that Novak lacked authority to send the termination notice because (1) funds were available and (2) Novak's notice violated TFC regulations. Broadmoor further responds that the relief it requests is prospective. We hold that Broadmoor sufficiently alleges Novak violated TFC regulations when he issued the termination notice.

---

[7] As this resolution disposes of Broadmoor's claim against Niles, we do not reach the issue of whether the relief Broadmoor seeks is impermissibly retrospective.

"When a state agency adopts an administrative rule, it commits itself to follow the plain meaning of the promulgated text, which courts should interpret as they would a statute . . . ." *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality*, 707 S.W.3d 102, 104 (Tex. 2025). Chapter 2167 of the Texas Government Code, which concerns leasing space for state agencies, authorizes TFC to "adopt rules necessary to administer this chapter." Tex. Gov't Code § 2167.008. Of the regulations promulgated pursuant to Chapter 2167, Broadmoor alleges two were violated. One of the regulations states that "[u]pon furnishing a written determination that the governmental agency occupies idle facilities or has idle capacity based upon [specified] factors . . . to the Commission, a lease *may be considered for cancellation* by the Commission upon request by a governmental agency."[8] 1 Tex. Admin. Code § 115.21(b) (emphasis added). The other regulation provides that a governmental agency such as HHSC in requesting "to cancel a lease due to lack of funding" must "provide evidence of notification to the Office of the Governor *in order for such a request to be considered* for action by the Commission." *Id.* § 115.22(b) (emphasis added).

Before Novak could consider terminating the lease with Broadmoor, these regulations thus required Novak to (1) receive a written determination from HHSC regarding whether it occupied idle facilities or has idle capacity based upon specified factors and (2) receive evidence from HHSC that it notified the Office of the Governor. Appellants do not contest in their briefing that Novak received neither a written determination nor evidence of notice to the Governor's Office from HHSC before he sent the termination notice. Here, Broadmoor has sufficiently alleged that Novak acted beyond his authority in violation of TFC regulations when he sent the

---

[8] "'Governmental agency' means a board, commission, department, office, or other agency in the executive branch of state government . . . ."1 Tex. Admin. Code § 115.20(4).

termination notice without first having received the written determination and evidence of notice to the Governor's Office.

Appellants object that these regulations do not apply because they were enacted in 2016, two years after the lease was entered into in 2014. Appellants cite to *Progressive County Mutual Insurance Company v. Caltzonsing* for support, which states "[t]he general rule is that the laws which are in existence at the time of the making of the contract are impliedly incorporated into the contract." 658 S.W.3d 384, 393 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) (quoting *Savin Corp. v. Copy Distrib. Co.*, 716 S.W.2d 690, 692 (Tex. App.—Corpus Christi–Edinburg 1986, no writ)). *Caltzonsing* is inapposite here. Novak's alleged conduct does not involve the violation of a contract—the lease—but rather of TFC regulations. The date that controls is not the date the lease was executed but rather the date of the alleged violative conduct, Novak sending the notice of termination to Broadmoor. The parties do not dispute that the notice was sent well after the regulations at issue were promulgated in 2016. 1 Tex. Admin. Code § 115.21–22.

Appellants also object that Broadmoor's ultra vires claim against Novak must fail because Broadmoor seeks impermissible retrospective relief. For ultra vires claims, "claimants are only entitled to prospective relief", which is "measured from the date of injunction." *City of Hous.*, 549 S.W.3d at 576. "Retrospective relief, however, remains barred by immunity absent a legislative waiver." *Hartzell v. S.O.*, 672 S.W.3d 304, 311 (Tex. 2023). Broadmoor in its live petition seeks the following injunctive relief against Novak:

- an injunction mandating that Defendant Mike Novak, in his Official Capacity as Executive Director of the Texas Facilities Commission: (i) withdraw the Notice of Termination of Lease, and (ii) cause the Texas Comptroller of Public Accounts to recommence rent payments as they come due under the terms of the Broadmoor Lease;

20

- an injunction mandating that Defendant Mike Novak, in his Official Capacity as Executive Director of the Texas Facilities Commission, comply with 1 Tex. Admin. Code § 115.22 in connection with any attempted termination of the Broadmoor Lease;

Citing *City of Galveston v. CDM Smith, Inc.*, Appellants argue that this requested relief is retrospective because the lease has already terminated and this relief seeks to undo that termination. 470 S.W.3d 558 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). In *CDM Smith*, a contractor sued officials of the City of Galveston for breaching a contract for services by purportedly failing to approve and then submit the contractor's invoices to the state agency that disbursed payments. *Id.* at 562–63, 570. The contractor argued it was pursuing prospective relief by seeking to compel the city officials to "correct violations of law in the future by" sending its invoices to the agency disbursing payments and "carrying out the City's prior determination to approve for payment $6 million of [the contractor's] invoices." *Id.* at 568. The Court held that this relief was retrospective because the City's refusals to approve and submit the invoices "have already occurred and are not recurring because the contract has expired . . . ." *Id.* at 570. The Court concluded that the contractor's claims "are based on alleged past breaches of contract—for which money damages are available—disguised as claims for prospective relief." *Id.*

The circumstances in this case are different. Broadmoor's ultra vires claim against Novak is not for breach of contract but for his alleged failure to properly follow TFC regulations before terminating a lease. The wording of Broadmoor's request seeks "to recommence rent payments as they come due," which is prospective—seeking rental payments only going forward—and does not seek impermissible past rental payments.[9] *Heinrich*, 284 S.W.3d at 368–69 ("We

---

[9] To the extent Broadmoor's request could be interpreted as seeking past rental payments, Broadmoor seeks impermissible retrospective monetary relief. *City of Hous.*, 549 S.W.3d at 576

conclude that while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies . . . .”). Broadmoor's request for Novak to withdraw the notice of termination is also in line with court precedent compelling government officials to reverse past decisions as a form of corrective relief. *Hartzell*, 672 S.W.3d at 319–20 (approving "restoration of [plaintiff's doctorate] degree on a forward-looking basis."); *Van Boven v. Freshour*, 659 S.W.3d 396, 400–01, 404 (Tex. 2022) (approving injunctive relief directing Texas Medical Board officials to file a "Void Report," which would remove a report of a doctor's alleged misconduct previously filed by the officials); *Bracey v. City of Killeen*, 417 S.W.3d 94, 114 (Tex. App.—Austin 2013, no pet.) (Field, J., sitting) (observing that governmental "immunity would not bar [a police officer's] claim for prospective reinstatement" after being indefinitely suspended).

In addition to arguing that Novak sending the termination notice violated TFC regulations, Broadmoor also maintains that sending the notice violated Section 2167.055(e) of the Texas Government Code, which states "[a] lease contract is contingent on the availability of money appropriated by the legislature to pay for the lease." Broadmoor argues Section 2167.055 gives TFC the implied authority to terminate leases when funds are no longer available and that Novak exceeded that authority when it sent its notice of termination because funds were in fact available.

We do not reach this issue today. If Novak violated the lease termination procedures in the TFC regulations, the appropriate remedy is to require Novak to follow the TFC regulations. If those procedures are followed, it is possible that TFC may decide not to terminate the lease. *See, e.g.*, 1 Tex. Admin. Code § 115.21 (requiring an agency seeking to terminate a lease due to lack of funding to send TFC

---

("[R]etrospective monetary claims are generally barred.").

a determination that it "occupies idle facilities or has idle capacity based upon" one of five factors before TFC can consider the agency's request). As we do not know at this stage of the proceedings whether the termination procedures were followed and, if they were not, how TFC may adjust its decision once they are, we decline to reach the issue of whether Novak violated Section 2167.055 at this time.

We sustain Appellants' third issue as to Broadmoor's ultra vires claim against Niles. We overrule Appellants' third issue as to Broadmoor's ultra vires claim against Novak with regard to whether Novak violated TFC regulations. We do not reach whether Novak violated Section 2167.055 at this stage of the proceedings.

## III. Broadmoor's Declaratory Judgment Act Claim

Broadmoor in its live petition seeks a judgment against Appellants "declaring that the 88th Texas Legislature did in fact appropriate funds to pay rent to Broadmoor in satisfaction of the State Lessee's obligations under the Broadmoor Lease for the 2024 and 2025 fiscal years." Appellants in their second issue argue that this claim as to the State, TFC, and HHSC is barred by sovereign immunity because it does not include a challenge to the validity or constitutionality of a statute. Appellants also argue that declaratory relief would not resolve the underlying controversy—a breach of contract claim—between these parties. Appellants further argue that declaratory judgment claims cannot be brought against state officials and so Broadmoor's claims against Novak and Niles are barred by immunity. Broadmoor responds that declaratory relief can be sought against state officials.

Broadmoor's Uniform Declaratory Judgment Act ("UDJA") claims against the State, TFC, HHSC, and Niles are fully barred by sovereign immunity. We do not reach whether Broadmoor's claim is barred as to Novak. "A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the

23

controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). Broadmoor's sought for declaration on its own would not "actually resolve" the controversies between these parties and Broadmoor does not make any argument that it would. Rather, this declaration is only instrumental in resolving the other claims Broadmoor raises—its breach of lease and ultra vires claims.

For the breach of lease claim, Broadmoor alleges the State Entities breached the lease because they improperly sent a notice of termination to Broadmoor and failed to pay rent in violation of the lease. Whether the Legislature appropriated sufficient funds to pay the rent is not enough on its own to show the State Entities violated the lease—that is the task of the breach of lease claim. But as discussed in Part I, HHSC and TFC are not parties to the lease and no waiver of immunity applies to the State, meaning the breach of lease claim against the State Entities fails. Without a viable breach of lease claim to latch onto, granting relief to Broadmoor's UDJA claim as to the State Entities would not "actually resolve" the controversies as to these parties and so too fails.

For the ultra vires claim against Niles, Broadmoor alleges Niles acted beyond his authority by failing to certify to TFC that HHSC had funds available to pay for the lease. Again, a declaration that the Legislature appropriated sufficient funds to pay for rent is not sufficient to resolve this controversy because the proper inquiry is whether Niles failed to perform a ministerial act by not certifying such funds were available under Section 2167.101. As explained in Part II.A., Niles' determination of whether there are sufficient funds available to pay for the lease is a matter of discretion under Section 2167.101, at least in this instance, and is not subject to an ultra vires claim. Absent a sufficiently alleged ultra vires claim against Niles, Broadmoor's UDJA claim against Niles does not "actually resolve" the dispute between Niles and Broadmoor.

That leaves the ultra vires claim against Novak.[10] We have held that Broadmoor has sufficiently alleged Novak violated TFC regulations. For the same reasons stated in Part II.B., we do not reach at this time whether Broadmoor has sufficiently alleged a UDJA claim as to Novak. That is, if Novak violated the lease termination procedures in the TFC regulations, the UDJA claim as to Novak may not need to be decided depending on what steps TFC takes after such a determination.

We sustain Appellants' second issue as to the UDJA claims against the State, TFC, HHSC, and Niles. We do not reach this issue as to the UDJA claim against Novak.

## CONCLUSION

We reverse the trial court's order denying Appellants' plea to the jurisdiction as to (1) Broadmoor's breach of lease claim against the State Entities; (2) Broadmoor's ultra vires claim against Niles; and (3) Broadmoor's UDJA claim against the State Entities and Niles. We render judgment dismissing these claims from the case.

We affirm the trial court's order denying Appellants' plea as to Broadmoor's ultra vires claim against Novak regarding his alleged TFC regulation violations. We do not reach the issue of whether Novak acted ultra vires under Section 2167.055 of the Texas Government Code. We also do not reach Broadmoor's UDJA claim as to Novak.

We remand to the trial court for further proceedings in accordance with this

---

[10] We note that, contrary to what Appellants argue, Broadmoor can seek declaratory relief against state officials. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.").

25

opinion.

/s/ April Farris
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.